[931 NYS2d 85]

The People of State of New York, Respondent, v Rahiem Wyatt, Appellant.

Second Department, October 18, 2011

### APPEARANCES OF COUNSEL

*Steven Banks*, New York City (*Susan Epstein* of counsel), for appellant.

*Charles J. Hynes*, *District Attorney*, Brooklyn (*Leonard Joblove*, *Morgan J. Dennehy* and *Marissa Prianti* of counsel), for respondent.

### OPINION OF THE COURT

ANGIOLILLO, J.P.

The defendant, Rahiem Wyatt, challenges a determination of the Supreme Court, Kings County, designating him a risk level two sex offender pursuant to Correction Law article 6-C, the Sex Offender Registration Act (hereinafter SORA), upon the Supreme Court's denial of his application for a downward departure to risk level one. We conclude that the Supreme Court properly, in effect, denied the defendant's application, and we affirm the risk level designation. In light of the large number of SORA cases involving the issue raised on this appeal, we take the opportunity to clarify that the proper standard to apply in evaluating a defendant's application for a downward departure from the presumptive risk level is proof by a preponderance of

the evidence of facts establishing an appropriate mitigating factor of a kind, or to a degree, otherwise not adequately taken into account by the guidelines.

## Factual and Procedural History

In a multiple-count indictment, the defendant was charged with committing various sex crimes against a single complainant between December 2005 and March 2006, when the ages of the defendant and the complainant were 27 and 14, respectively. On November 3, 2006, pursuant to a negotiated disposition, the defendant pleaded guilty to one count of attempted rape in the second degree (see Penal Law §§ 110.00, 130.30 [1] [sexual intercourse between a defendant 18 or older and a complainant younger than 15]). On December 6, 2006, he was sentenced as a second felony offender to an indeterminate term of imprisonment of 1½ to 3 years.

On March 24, 2009, prior to the maximum expiration date on the defendant's period of incarceration, the Board of Examiners of Sex Offenders (hereinafter the Board) prepared a Risk Assessment Instrument (hereinafter the RAI) containing the Board's recommendation to the Supreme Court regarding the defendant's appropriate risk level designation under SORA. In the RAI, the Board assessed points under six risk factors, as follows: 25 points under risk factor 2 ("Sexual intercourse, deviate sexual intercourse or aggravated sexual abuse"); 20 points under risk factor 4 ("Continuing course of sexual misconduct"); 20 points under risk factor 5 ("Age of victim 11 through 16"); 30 points under risk factor 9 ("Prior violent felony"); 10 points under risk factor 10 ("Recency of prior offense - Less than three years"); and 10 points under risk factor 12 ("Not accepted responsibility"). The "Total Risk Factor Score" of 115 points placed the defendant at risk level three. The applicable point ranges in the scoring system are: 0 to 70, level one (low); 75 to 105, level two (moderate); and 110 to 300, level three (high). The Board recommended a downward departure from risk level three to risk level two, noting that, despite the defendant's criminal record, the instant offense was his only conviction for a sex offense and, although the victim was only 14 years of age, the acts were not the result of forcible compulsion.

At the SORA determination proceeding, the People submitted documentary evidence in support of the Board's assessment of 115 points and contended that the defendant should be designated a risk level three sex offender; the People opposed a

downward departure. The defendant disputed the assessment of 10 points under risk factor 12 in the RAI, contending that he had accepted responsibility for his actions. In support of this contention, he relied upon certain statements he made to the police at the time of his arrest, a letter he wrote to the Board, a psychologist's report, and a letter the complainant wrote to the defendant's attorney. The defendant contended that, after subtracting the 10 points assessed under risk factor 12, the resulting score of 105 was within risk level two; he sought a downward departure from risk level two to risk level one based upon the alleged consensual nature of his relationship with the complainant.

The Supreme Court did not pass upon the merits of the dispute regarding the sufficiency of the evidence in support of the 10 points assessed under risk factor 12, but noted that, even if the 10 points were removed from the RAI, the resulting score of 105 points placed the defendant at risk level two, and the Board was not opposed to a risk level two designation. Accordingly, the Supreme Court designated the defendant a risk level two sex offender and, in effect, denied his application for a downward departure to risk level one.

On appeal, the defendant contends that the Supreme Court failed to give him the benefit of the Board's recommendation for a downward departure. He contends that his presumptive risk level after the subtraction of the disputed 10 points is risk level two and, thus, the Board's recommendation for a downward departure should have been applied to depart downward from level two to level one. In addition, he advances other alleged mitigating factors to support a downward departure to level one, including the fact that he was convicted of an attempt only, the offense was "consensual" and statutory, and the violent felonies in his record did not involve "actual violence," but were convictions for weapons possession.

We turn now to an examination of the SORA statutes, the Board's Sex Offender Registration Act: Risk Assessment Guidelines and Commentary (2006 ed.) (hereinafter the Guidelines), and case law, to determine the appropriate standard for evaluation of the defendant's contentions.

## SORA Statutes

The Board, which consists of members who are "experts in the field of the behavior and treatment of sex offenders," is charged with developing "guidelines and procedures to assess

the risk of a repeat offense . . . and the threat posed to the public safety" of a sex offender (Correction Law § 168-*l* [1], [5]). The Board's guidelines "shall be based upon, but not limited to," a prescribed list of factors provided in the statute (Correction Law § 168-*l* [5]). Pursuant to this statutory mandate, the Board developed the Guidelines and their corresponding point values, which are incorporated in the RAI, the instrument used to assess a sex offender's risk of reoffense and threat to public safety (*see* Guidelines at 2-3). The Board must apply the Guidelines "to make a recommendation to the sentencing court," providing for one of three levels of notification "depending upon the degree of the risk of re-offense by the sex offender" (Correction Law § 168-*l* [6]).

Correction Law § 168-n governs the procedure for the initial judicial determination of a sex offender's risk level upon release from incarceration. The sex offender is given notice of the Board's review process and is afforded the opportunity to submit to the Board "any information relevant to the review" (Correction Law § 168-n [3]). The sentencing court, applying the Guidelines, is to make a determination with respect to the risk level designation "after receiving a recommendation from the [B]oard" (Correction Law § 168-n [2]). The sex offender is given notice of "the determination proceeding" and is advised of his or her rights to a hearing, to be represented by counsel at the hearing, and to appear and be heard; the SORA court is required to consider "any relevant materials and evidence" submitted by the sex offender, the district attorney and the Board, which may include "reliable hearsay evidence" (Correction Law § 168-n [3]). Pursuant to the statutory scheme, "the Legislature did not limit the proof to what would be admissible at a civil or criminal trial" (*People v Mingo*, 12 NY3d 563, 572 [2009]). The applicability of a particular guideline to the facts of the sex offender's case is a legal question based upon the court's interpretation of the guideline (*see People v Johnson*, 11 NY3d 416, 421 [2008] [where the sex offender challenged the applicability of a particular risk factor to the facts of his case and did not request a downward departure, he "made only legal arguments, directed at the interpretation of the Guidelines"]; *see also People v Alemany*, 13 NY3d 424, 429-431 [2009]).

The SORA determination proceeding is "civil in nature" (*People v Mingo*, 12 NY3d at 571). By statute, the district attorney bears an evidentiary burden: "The state shall appear by the district attorney, or his or her designee, who shall bear the

burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]). "Facts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence" (*id.*). Nearly identical provisions regarding the district attorney's burden by "clear and convincing evidence" are contained in the statutes governing the procedure for determining the risk level of sex offenders who are sentenced to probation, a fine, or conditional or unconditional discharge, a determination which the SORA court makes without the input of the Board (Correction Law § 168-d [3]), and the procedure for determining the risk level of out-of-state sex offenders who relocate to New York (*see* Correction Law § 168-k [2]). In addition, the district attorney's burden "by clear and convincing evidence" applies where a defendant controverts certain allegations relevant to his certification as a sex offender at the time of his conviction (Correction Law § 168-d [1] [b], [c]). In all of the instances in which the district attorney must satisfy a burden by clear and convincing evidence, the sex offender has a statutory right to submit relevant evidence; significantly, however, SORA imposes no evidentiary burden on the sex offender in the presentation of such evidence (*see* Correction Law § 168-d [1] [b], [c]; § 168-d [3]; § 168-k [2]; § 168-n [3]).

Accordingly, pursuant to the statutory scheme applicable to the initial risk level determination proceeding, the SORA court must determine whether the People have met their burden of proving the facts in support of that risk level by clear and convincing evidence. On appeal, where a sex offender disputes the point assessment under one or more risk factors in the RAI, this Court must determine whether the points assessed are supported by the evidence presented at the hearing (*see e.g. People v Pettigrew*, 14 NY3d 406, 408-409 [2010]; *People v Crum*, 81 AD3d 619 [2011]). Where the Supreme Court has failed to set forth findings of fact and conclusions of law as mandated by statute (*see* Correction Law § 168-n [3]; *People v Leopold*, 13 NY3d 923, 924 [2010]), this Court may, where the record is sufficient, make its own findings of fact in determining whether the point assessment is supported by clear and convincing evidence (*see People v Vega*, 79 AD3d 718, 719 [2010]).

On appeal, the defendant does not raise any issue concerning the sufficiency of the evidence in support of the point assessment under any of the risk factors in the RAI. The sole question

before us on this appeal is whether the Supreme Court properly evaluated the defendant's application for a downward departure from risk level two to risk level one.

### The Board's Commentary Regarding Departures

SORA does not expressly provide for downward and upward departures from the risk level calculated by aggregating the points under applicable risk factors in the RAI. Rather, all provisions regarding departures appear in the commentary to the Guidelines:

> "The risk level calculated from aggregating the risk factors and from applying the overrides is 'presumptive' because the Board or court may depart from it if *special circumstances* warrant. The ability to depart is premised on a recognition that an objective instrument, no matter how well designed, will not fully capture the nuances of every case. Not to allow for departures would, therefore, deprive the Board or a court of the ability to exercise sound judgment and to apply its expertise to the offender. Of course, if there was to be a departure in every case, the objective instrument would be of minimal value. The expectation is that the instrument will result in the proper classification in most cases so that departures will be the exception—not the rule. . . .

> "Generally, the Board or a court may not depart from the presumptive risk level unless it concludes that there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines . . . Circumstances that may warrant a departure cannot, by their very nature, be comprehensively listed in advance. Departures may be upward . . . or downward." (Guidelines at 4-5 [emphasis added].)

The departure concept has become a common aspect of SORA litigation, and we are frequently called upon to review orders granting or denying departure applications. The Court of Appeals has observed that "[w]hile departures from the Board's recommendations are of course the exception, not the rule, the possibility of such departures has been generally recognized" (*People v Johnson*, 11 NY3d at 421). "[T]he level suggested by the RAI is merely presumptive and a SORA court possesses the

discretion to impose a lower or higher risk level if it concludes that the factors in the RAI do not result in an appropriate designation" (*People v Mingo*, 12 NY3d at 568 n 2; *see People v Pettigrew*, 14 NY3d at 409).

The term "special circumstances" in the commentary to the Guidelines, taken in context, is a shorthand version of the phrase "aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" (Guidelines at 4). While recognizing that special circumstances "cannot, by their very nature, be comprehensively listed in advance" (*id.*), the Board nevertheless included in the Guidelines a few suggested factors which may warrant a departure. The Board's examples of aggravating factors are: (1) clear and convincing evidence of the offender's commission of a sex crime which does not appear in the offender's criminal record (*id.* at 7); (2) under-assessment of the offender's risk to public safety by a score of zero under risk factor 2 for sexual contact where the offender actually intended to rape the victim (*id.* at 9); and (3) the offender's commission of concurrent or subsequent crimes which are not adequately reflected in the offender's criminal record under risk factor 9 (*id.* at 14). Examples of mitigating factors listed in the commentary to the Guidelines are: (1) the offender was an accessory to the crime and the scoring of 25 points for risk factor 2 (sexual contact), applying traditional principles of accessorial liability, results in an over-assessment of the offender's risk to public safety (*id.* at 7); (2) the victim's lack of consent is due only to inability to consent by virtue of age, and the scoring of 25 points for risk factor 2 results in an over-assessment of the offender's risk to public safety (*id.* at 9); (3) the assessment of points under risk factor 9 for a prior conviction of endangering the welfare of a child is based upon an offense which did not involve sexual misconduct (*id.* at 14); and (4) the offender exhibited an "exceptional" response to a sex offender treatment program (*id.* at 17).

Manifestly, the examples of special circumstances suggested in the Guidelines reflect the Board's mandate to develop guidelines and procedures assessing the sex offender's "risk of a repeat offense" and "threat posed to the public safety" (Correction Law § 168-*l* [5]), the statutory considerations which "the risk level seeks to capture" (Guidelines at 2). The provision for upward and downward departure from the presumptive risk level arose from the Board's recognition that aggravating and mitigating factors may exist which aid in the assessment of the

offender's risk of reoffense and danger to the community, yet are "otherwise not adequately taken into account by the guidelines." Therefore, an appropriate aggravating factor is one which tends to establish a higher likelihood of reoffense or danger to the community, and an appropriate mitigating factor is one which tends to establish a lower likelihood of reoffense or danger to the community than the presumptive risk level calculated on the RAI. Whether a particular factor falls within the definition of "an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" is a legal question for the court, based upon an interpretation of the Guidelines and SORA (*People v Johnson*, 11 NY3d at 421 [internal quotation marks omitted]). Where the alleged factor is taken into account by the Guidelines or is not related to the risk of reoffense and danger to the community, as a matter of law a departure is not warranted (*see People v Cohen*, 73 AD3d 1003 [2010]; *People v Rivera*, 73 AD3d 881 [2010]; *People v Lyons*, 72 AD3d 776 [2010]; *People v Townsend*, 60 AD3d 655, 656 [2009]).

As the Guidelines make clear, where an aggravating or mitigating factor is shown to exist, the Board or a court "may" choose to depart if the factor indicates that the point score on the RAI has resulted in an over- or under-assessment of the offender's actual risk to public safety (Guidelines at 7, 9, 14). The Guidelines equally make clear that departures from the presumptive risk level should be the exception, not the rule (*id.* at 4). Thus, upon identifying, as a matter of law, an appropriate aggravating or mitigating factor and proffering sufficient evidence of facts supporting its existence, the proponent of the departure is not automatically entitled to the relief sought. Rather, upon such a showing, the court is authorized to exercise its sound discretion in determining whether, under all the circumstances of the case, the requested departure should be granted or denied. Accordingly, a sufficient evidentiary showing of facts establishing the existence of an appropriate aggravating or mitigating factor is the threshold condition triggering the court's discretionary authority to depart from the presumptive risk level.

We turn now to consider the appropriate evidentiary burden that must be borne by the proponent of an upward or downward departure to establish the facts in support of the propounded aggravating or mitigating factor.

### Evidentiary Burden of Proof for Special Circumstances

As noted, at the initial "determination proceeding," the district attorney bears "the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]). SORA does not discuss the concept of departure from the presumptive risk level and, thus, there is no statutorily mandated evidentiary burden governing an application for a departure. The Guidelines state that the Board or a court "may not depart from the presumptive risk level unless . . . there exists an aggravating or mitigating factor" (Guidelines at 4). While the Board has suggested, through an example in the Guidelines, that the proponent of an upward departure bears the burden of proving the facts in support of an aggravating factor by clear and convincing evidence (*see* Guidelines at 7), the Board has not suggested an evidentiary burden that the proponent of a downward departure must satisfy to prove the facts establishing the existence of a mitigating factor (*id.* at 4).

Our decisions in appeals reviewing orders which grant or deny departures from the presumptive risk level frequently include general reference to the clear and convincing evidence standard, without distinguishing between upward and downward departures. For example, in *People v Guaman* (8 AD3d 545 [2004]), where we reviewed the SORA court's denial of a defendant's application for downward departure, we held that "[t]here must exist clear and convincing evidence of the existence of special circumstance to warrant an upward or downward departure," and concluded that the factors alleged by the defendant in mitigation did not warrant a departure. In *People v White* (25 AD3d 677 [2006]), where we reviewed the SORA court's grant of the People's application for an upward departure, we held that "a departure is warranted where clear and convincing evidence demonstrates the existence of an aggravating or mitigating factor that in kind or degree is not otherwise taken into account by the guidelines." To the extent that these cases, and those with similar language, hold that the ultimate risk level designation must be supported by clear and convincing evidence, they correctly reflect the statutory mandate which imposes this burden of proof on the district attorney.

> "The statute is quite clear: the Board's duty is to 'make a recommendation to the sentencing court' (Correction Law § 168-*l* [6]) and the court, applying

a clear and convincing evidence standard, is to make its determination after considering that recommendation, and any other materials properly before it (Correction Law § 168-n [3])" (*People v Johnson*, 11 NY3d at 421).

In addition, the language in some of our cases goes a step further to suggest that, not only must the ultimate determination be supported by clear and convincing evidence, but also, the proponent of a departure has the burden of adducing clear and convincing evidence of the facts in support of the aggravating or mitigating factor which is the threshold condition to the SORA court's exercise of discretion. Thus, for example, we have noted that the "prosecution presented clear and convincing evidence to support the upward departure" (*People v Forney*, 28 AD3d 446, 446 [2006]), or the "defendant failed to show by clear and convincing evidence that special circumstances existed warranting a downward departure from his presumptive risk level . . . designation" (*People v Burgess*, 80 AD3d 589 [2011]). Where the case involves an application by the People for an upward departure, this evidentiary burden is mandated by statute, since the district attorney bears the burden of proving the facts supporting the determinations sought by clear and convincing evidence (*see* Correction Law § 168-n [3]; *People v Walker*, 67 AD3d 760 [2009]; *People v Hill*, 50 AD3d 990 [2008]; *People v Miranda*, 24 AD3d 909, 910 [2005]).

In sum, with respect to upward departures, the threshold condition triggering the court's exercise of discretion is twofold: (1) as a matter of law, the cited aggravating factor must tend to establish a higher likelihood of reoffense or danger to the community and be of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) the People must prove the facts in support of the aggravating factor by clear and convincing evidence. Upon satisfaction of that threshold condition, the SORA court may, in its discretion, choose to upwardly depart or make no change. Where the threshold is not met, however, the SORA court may not upwardly depart and must impose the presumptive risk level. In the latter situation, the SORA court has no authority to exercise its discretion to depart upward because SORA requires the ultimate risk designation to be supported by clear and convincing evidence.

By contrast, the issue of downward departure is raised in a different context. Typically, the sex offender makes the applica-

tion for a downward departure at the initial determination proceeding and, in some cases, that application is supported by a recommendation of the Board. In either event, the application is made in the context of clear and convincing evidence supporting the point assessment in the RAI for the risk level from which the sex offender seeks a downward departure. It follows that, if the SORA court grants the request for the downward departure, the resulting lower designation is necessarily supported by clear and convincing evidence of a point total on the RAI within the range for the ultimate determination, as required by Correction Law § 168-n (3).

Like any movant in a civil proceeding, a sex offender making an application for a downward departure bears the burden of establishing his or her entitlement to relief (*see People v Sivells*, 83 AD3d 1027 [2011]; *People v Arotin*, 19 AD3d 845, 847 [2005] [the party urging the court to depart from a Board recommendation supported by sufficient evidence bears the burden of establishing special circumstances]). The threshold condition to the SORA court's exercise of discretion involves the twofold inquiry whether (1), as a matter of law, the cited mitigating factor tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines, and (2) the sex offender has established the facts in support of that mitigating factor. With regard to the second prong of this showing, the question remains whether the sex offender bears the burden of establishing the facts in support of the mitigating factor by clear and convincing evidence. We find no basis in SORA or the Guidelines for imposing that evidentiary burden.

The statutes governing the initial determination proceeding, while permitting the sex offender to present evidence, place the burden of proving the facts in support of the determination on the People, not the sex offender (*see* Correction Law §§ 168-d, 168-n). A single provision of SORA, Correction Law § 168-*o*, places a burden of proof on the sex offender in the unrelated context of proceedings commenced by the sex offender subsequent to the initial risk level determination. Under subdivision (1) of that section, certain risk level two sex offenders who have been registered for a minimum period of 30 years may file a petition for relief from further registration, and in such proceedings, "[t]he sex offender shall bear the burden of proving by clear and convincing evidence that his or her risk of repeat offense and threat to public safety is such that registration or

verification is no longer necessary" (Correction Law § 168-*o* [1]). Under subdivision (2) of that section, a sex offender may petition to modify his or her level of notification, and in such proceedings, "[t]he sex offender shall bear the burden of proving the facts supporting the requested modification by clear and convincing evidence" (Correction Law § 168-*o* [2]; *see People v McCollum*, 83 AD3d 1504 [2011]). A modification petition "shall not be considered more than annually" (Correction Law § 168-*o* [2]). While SORA allows "[a]ny sex offender" to petition for modification (*id.*), as a practical matter, no relief is available to a risk level one sex offender, who is already classified in the lowest designation and has no statutory right to petition for complete relief from registration (*see Matter of Attorney Gen. of the State of N.Y. v Simon*, 27 Misc 3d 546 [2010]; *cf. Woe v Spitzer*, 571 F Supp 2d 382, 386 [2008]). Subdivision (3) of Correction Law § 168-*o* affords the district attorney an opportunity, under certain circumstances, to petition for an upward modification of the final risk level designation, and in such proceedings, the district attorney bears the burden of proof by clear and convincing evidence (*see People v Turpeau*, 68 AD3d 1083 [2009]).

On its face, the statutory scheme plainly distinguishes the procedures applicable to an initial determination proceeding and those applicable to a subsequent modification proceeding. The procedures in Correction Law § 168-*o* governing modification petitions, including the clear and convincing evidence burden placed on the sex offender under subdivisions (1) and (2), do not govern the initial determination proceeding under Correction Law §§ 168-d or 168-n and, thus, do not govern a sex offender's application for a downward departure at the initial determination proceeding. Our construction of the statutory scheme is supported by decisional law which consistently notes this distinction between the initial determination proceeding and subsequent petitions for modification pursuant to section 168-*o* of the Correction Law.

For example, although a district attorney's petition for upward modification pursuant to Correction Law § 168-*o* (3) must be dismissed on the law where the district attorney has not followed the procedures in that statute (*see People v Damato*, 58 AD3d 819, 820-821 [2009]), it has been held that the procedures of Correction Law § 168-*o* (3) do not govern the district attorney's motion pursuant to CPLR 2221 to renew or reargue, which involves reconsideration of the initial determina-

tion proceeding (*see People v Wroten*, 286 AD2d 189, 194-196 [2001]). "SORA . . . contemplates that either party may seek reargument or renewal with respect to a risk level determination, whether in anticipation of an appeal, in conjunction therewith, or as an alternative thereto" (*id.* at 196; *see People v Hahlbohm*, 63 AD3d 706, 707 [2009]).

The Court of Appeals has also observed the distinction between the initial determination proceeding and a subsequent modification proceeding in *People v David W.* (95 NY2d 130 [2000]), which involved a challenge to the constitutionality of SORA prior to certain amendments which took effect January 1, 2000 (*see* L 1999, ch 453, §§ 6, 16, 29). In holding that the previous version of SORA violated the sex offender's constitutional right to procedural due process, the Court rejected the People's argument that the procedures governing modification petitions pursuant to Correction Law § 168-*o* provided adequate procedural safeguards as a substitute for the lack of such safeguards in the initial determination proceeding:

> "In using the words 'relieved' and 'further' the Legislature indicated that this section [Correction Law § 168-*o*] was to be used after the SORA risk level determination had been in place along with all the adverse consequences of that risk level imposed on the sex offender. The ability to make *future* modifications to the duty to register differs from the procedures that go into making the original risk level determination . . . The right to petition the sentencing court is not a substitute for an initial due process hearing because the defendant bears the burden of proving by 'clear and convincing' evidence that his risk level should be modified (Correction Law § 168-*o* [2]). Due process requires that the State bear the burden of proving, at some meaningful time, that a defendant deserves the classification assigned" (*People v David W.*, 95 NY2d at 140).

Thus, to impose a burden by clear and convincing evidence on a sex offender at the initial SORA risk level determination proceeding is inconsistent with the People's statutory burden of proof by clear and convincing evidence, which was added by statutory amendments effective in 2000.

"[T]he 'clear and convincing evidence' standard [is] an 'intermediate standard' between the high standard of 'beyond a reasonable doubt' used in criminal proceedings and 'fair preponder-

ance' used in ordinary civil proceedings" (*Matter of New York City Dept. of Social Servs. v Oscar C.*, 192 AD2d 280, 283-284 [1993] [citations omitted], quoting *Santosky v Kramer*, 455 US 745, 756 [1982]). This intermediate standard of proof has been deemed necessary "to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma" (*Santosky v Kramer*, 455 US at 756 [internal quotation marks omitted] [holding that fair preponderance of the evidence standard in Family Court Act § 622, as applied to a parental rights termination proceeding, violated constitutional due process]). In light of the stigma imposed by sex offender registration and notification, SORA appropriately places a burden on the district attorney to prove the facts in support of the ultimate risk level designation by clear and convincing evidence (*see People v David W.*, 95 NY2d at 137).

The same consideration is inapplicable to a sex offender's request for a downward departure made during the initial determination proceeding. Rather, the countervailing interests of the State are relevant to the question of the appropriate evidentiary burden to place on the sex offender. Where both the State and private interests involved are "weighty and compelling," a balance must be struck by assessing the risk of error created by the subject standard of proof (*Matter of Lee TT. v Dowling*, 87 NY2d 699, 711 [1996]). Thus, a sex offender's private interest in avoiding the stigma of a higher risk level designation is balanced against the State's interests in properly assessing the risk level to aid law enforcement, prevent sexual victimization, and protect the public, which were the legislative purposes in enacting SORA (*see* L 1995, ch 192, § 1). With respect to a sex offender's application for a downward departure, the lower burden of a preponderance of the evidence does not create a substantial likelihood that an improper risk level designation will result in derogation of the State's interests. A sex offender's successful showing by a preponderance of the evidence of facts in support of an appropriate mitigating factor does not automatically result in the relief requested, but merely opens the door to the SORA court's exercise of its sound discretion upon further examination of all relevant circumstances.

Since there is no express mandate in SORA, the Guidelines, or the commentary for the imposition of a clear and convincing evidence burden upon the sex offender in the context of an application for a downward departure, we hold that the

preponderance standard used in ordinary civil proceedings is applicable to the sex offender's initial factual burden of establishing the existence of an appropriate mitigating factor. In this regard, we emphasize that the sex offender's successful factual showing does no more than establish the threshold condition for the SORA court's exercise of its discretion. Thus, the sex offender meets this threshold condition by satisfying a twofold showing: (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence. At that point, the SORA court may exercise its discretion to grant or deny the departure application based upon an examination of all circumstances relevant to the offender's risk of reoffense and danger to the community.

Analysis of the Defendant's Downward Departure Application

Here, the defendant's first contention is that the SORA court did not give him the full benefit of the Board's recommendation for a downward departure. The Board assessed a total point score within presumptive risk level three, and recommended a downward departure to risk level two. The Supreme Court did not grant the downward departure from risk level three to risk level two, but rather, in effect, removed 10 points from the total number of points assessed in the RAI, resulting in a score within presumptive risk level two. The defendant contends that, therefore, the Supreme Court should have honored the Board's recommendation by departing downward from risk level two to risk level one.

Contrary to the defendant's contention, the mere fact that the Board recommended a downward departure to risk level two did not require the Supreme Court to grant a downward departure to risk level one. The Board's recommendation to depart from risk level three to risk level two was premised upon the inclusion of the disputed 10 points. The defendant's effort to divorce the context of the recommendation from the recommendation itself has left him with the bare assertion that a court is obliged to honor the Board's recommendation to depart irrespective of the reasoning that went into the recommendation. Although the factors cited by the Board in support of a recommendation to downwardly depart may be ap-

propriate mitigating factors, the mere fact that the Board has made a recommendation to depart, in a vacuum, is not a mitigating factor warranting departure because it is not related to the defendant's risk of reoffense or danger to the community.

■ The defendant next contends that a downward departure to risk level one was warranted because the crime of which he was convicted was *attempted* rape in the second degree. This contention is unpreserved for appellate review and, in any event, is without merit. As a matter of a law, this is not a factor of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines. The People presented clear and convincing evidence of the defendant's sexual contact with the complainant on more than one occasion, and that evidence is taken into account under risk factors 2 and 4. The fact that the defendant was allowed to plead guilty to an attempt crime notwithstanding this evidence of actual sexual contact is a result of the plea bargaining process, and it is proper to assess points on the RAI based on clear and convincing evidence of sexual contact even if the ultimate crime to which the defendant pleaded was an attempt crime (*see People v Goodwin*, 49 AD3d 619, 620 [2008]). Accordingly, the defendant's conviction of attempted rape in the second degree is not an appropriate mitigating factor related to his danger to the community or risk of reoffense.

■ Next, the defendant contends that the Supreme Court should have departed downward because the offense was "consensual" and statutory. A relevant mitigating factor is expressly set forth in the Guidelines with regard to risk factor 2 (sexual intercourse), which provides that "[t]he Board or a court may choose to depart downward in an appropriate case and in those instances where (i) the victim's lack of consent is due only to inability to consent by virtue of age and (ii) scoring 25 points in this category results in an over-assessment of the offender's risk to public safety" (Guidelines at 9). Notably, this mitigating factor has two components. Here, the defendant established, by a preponderance of the evidence, that the first part of this mitigating factor applies to him by adducing evidence that the only reason for the complainant's lack of consent was her legal inability to consent due to her age. However, the defendant failed to adduce any additional facts in support of the second prong of the factor to establish by a preponderance of the evidence that the scoring of 25 points under risk factor 2 resulted in the over-assessment of his risk to public safety.

Previous cases considering this mitigating factor have recognized that an over-assessment of risk to public safety may be shown with evidence of a combination of facts such as a minimal age difference between the defendant and the complainant and the absence of forcible compulsion (*see e.g. People v Modica*, 80 AD3d 590, 592 [2011]; *People v Herron*, 59 AD3d 414 [2009]; *see also People v Goossens*, 75 AD3d 1171 [2010]; *People v Brewer*, 63 AD3d 1604, 1605 [2009]). Here, although there was no evidence of forcible compulsion, the defendant was 13 years older than the complainant, who was his cousin. The Board's recommendation, which is based in part on the consensual nature of the crime, does not constitute additional evidence and, in any event, would only support a conclusion that the total point score for risk level three was an over-assessment of the defendant's risk to public safety. The additional materials submitted by the defendant did not provide evidence of an over-assessment under risk factor 2. The defendant provided his own letter with self-serving statements that he had merely kissed and embraced the complainant and the report of a psychologist who took those statements at face value, without the benefit of reviewing other evidence, to opine that "a lower rating[ ] perhaps even level 1[,] will be appropriate." The defendant also submitted a letter from the complainant to his attorney in connection with the defendant's then pending federal prosecution for possession of a firearm, in which the complainant purportedly claimed, contrary to her statements to the police and other evidence in the record, that the defendant did not have sex with her. These materials did not satisfy the defendant's burden of demonstrating, by a preponderance of the evidence, that the assessment of points under risk factor 2 for sexual contact was an over-assessment of his risk to public safety (*see People v Perez*, 61 AD3d 946 [2009]). Therefore, the defendant failed to meet his burden of establishing the existence of this mitigating factor by a preponderance of the evidence in order to establish the threshold condition to the SORA court's exercise of discretion.

■ Finally, the defendant contends in mitigation that his past convictions for weapons possession crimes did not involve "actual violence." This contention is unpreserved for appellate review and, in any event, is without merit. As a matter of law, this is not a mitigating factor of a kind or to a degree not otherwise taken into account by the Guidelines. The defendant does not dispute that his previous convictions of criminal pos-

session of a weapon in the third degree constitute violent felony offenses as defined in Penal Law § 70.02 (1) (c). As the Guidelines note, "[t]he term violent felony, as used in the guideline, has the same meaning as in the Penal Law (*see* Penal Law § 70.02 [1])" (Guidelines at 14). Therefore, this factor is adequately taken into account in the RAI, which properly assessed points for the defendant's prior violent felony offenses under risk factor 9.

In sum, as a matter of law, all but one of the alleged mitigating factors cited by the defendant were not of a kind or to a degree otherwise not adequately taken into account by the Guidelines. With respect to the sole appropriate mitigating factor cited by the defendant, he failed to establish facts in support of its existence by a preponderance of the evidence. Thus, the defendant failed to establish the threshold condition for the Supreme Court's exercise of discretion. Accordingly, a downward departure from presumptive risk level two to risk level one was not warranted, and the Supreme Court properly, in effect, denied the defendant's application (*see People v Brown*, 85 AD3d 750 [2011], *lv denied* 17 NY3d 708 [2011]; *People v Mendez*, 79 AD3d 834, 835 [2010]; *People v Johnson*, 77 AD3d 897 [2010]).

The order is affirmed.

HALL, ROMAN and COHEN, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.