In the Matter of STATE OF NEW YORK, Respondent, v IAN I., Appellant. [7 NYS3d 199]—

In a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Ian I., an alleged sex offender requiring civil management, Ian I. appeals from an order of the Supreme Court, Dutchess County (Forman, J.), dated October 21, 2013, which, upon a finding, made after a jury trial, that he suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03 (i), and upon a determination, made after a dispositional hearing, that he is currently a dangerous sex offender requiring civil confinement, in effect, granted the petition and directed that he be committed to a secure treatment facility for care, treatment, and control until such time as he no longer requires confinement.

Ordered that the order is reversed, on the law, without costs or disbursements, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Dutchess County, for further proceedings, including a new trial on the issue of mental abnormality, and, if necessary, a new dispositional hearing; and it is further,

Ordered that the appellant shall not be released pending the completion of such trial (*see* Mental Hygiene Law § 10.06 [k]).

A court may set aside a jury verdict as legally insufficient and enter judgment as a matter of law only where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Matter of State of New York v David M.*, 120 AD3d 1423, 1424 [2014]). A verdict that is supported by legally sufficient evidence may nonetheless be set aside as contrary to the weight of the evidence, and a new trial ordered, if the verdict could not have been reached on any fair interpretation of the evidence (*see Matter of State of New York v David M.*, 120 AD3d at 1424). "Notably, [a] jury's determinations as to the credibility of the witnesses are entitled to great deference given the jury's opportunity to evaluate the weight and credibility of conflicting expert testimony" (*Matter of State of New York v Edison G.*, 107 AD3d 723, 724 [2013] [internal quotation marks omitted]; *see Matter of State of New York v Shawn X.*, 69 AD3d 165, 168 [2009]).

At trial, the petitioner, State of New York, presented the testimony of Dr. Ronald S. Field and Dr. Kostas A. Katsavdakis, both of whom diagnosed the appellant with bipolar disorder, antisocial personality disorder, and polysubstance disorder. In addition, Dr. Field diagnosed the appellant with sexual preoccupation and sexual interest in underage girls. Both experts testified that the appellant's disorders, together with his continuing sexually deviant preference for post-pubescent girls approximately 14 years of age, predisposed him to committing sex offenses and caused him to have serious difficulty controlling that behavior. While the diagnoses of sexual preoccupation and sexual interest in underage girls are not recognized diagnoses in the Diagnostic and Statistical Manual of Mental Disorders, it does not necessarily follow that those conditions were not relevant to the determination of mental abnormality (*see Matter of State of New York v Shannon S.*, 20 NY3d 99, 106 [2012]). In considering the expert opinions, "the jury was free to make its own credibility determinations and weigh the

competing expert testimonies accordingly" (*Matter of State of New York v James Z.*, 97 AD3d 1046, 1048 [2012] [internal quotation marks omitted]). Here, the evidence upon which the jury made its determination was legally sufficient to support the verdict, since there was a valid line of reasoning by which the jury could conclude that the appellant suffered from a mental abnormality based on the evidence presented at trial (*see Matter of State of New York v Derrick B.*, 68 AD3d 1124, 1126-1127 [2009]).

Additionally, the jury's verdict that the appellant here suffered from a mental abnormality, as defined by Mental Hygiene Law § 10.03 (i), was supported by a fair interpretation of the evidence (*see* Mental Hygiene Law §§ 10.03 [i]; 10.07 [a]; *Matter of State of New York v Alfredo M.*, 96 AD3d 1068, 1069 [2012]; *Matter of State of New York v Derrick B.*, 68 AD3d 1124, 1126 [2009]).

Nevertheless, we agree with the appellant's contention that he was deprived of a fair trial due to the cumulative prejudicial effect of several trial errors. Contrary to the State's contention, the Supreme Court erred in denying that branch of the appellant's pretrial motion which was to conduct a hearing pursuant to *Frye v United States* (293 F 1013 [1923]) concerning the admissibility of the Hare PCL-R Instrument (hereinafter the PCL-R), which measures psychopathy, during the mental abnormality phase of the trial (*see Matter of State of New York v Rosado*, 25 Misc 3d 380 [2009]; *see generally Matter of State of New York v Andrew O.*, 68 AD3d 1161, 1163 [2009], *revd on other grounds* 16 NY3d 841 [2011]; *People v Morales*, 227 AD2d 648, 649 [1996]). While the use of actuarial risk assessment instruments is scientifically accepted as a means to measure the risk of recidivism, the use of such instruments to determine the existence of a mental abnormality is novel, and the State's bare statement to the contrary was insufficient to satisfy the "general acceptance" test of admissibility (*see Matter of State of New York v Rosado*, 25 Misc 3d at 386-387). For these same reasons, the court erred in concluding that the probative value of the PCL-R outweighed any prejudicial effect of the terms "psychopath" or "psychopathy." Significantly, the State's expert, Dr. Katsavdakis, testified that the PCL-R is not a "direct assessment of mental abnormality" and was "not designed" to measure "[h]ow much more difficult [it is] for somebody who has a high psychopathy score to control their behavior [as compared to] somebody who has a low score" and that "would be [a] misuse of the test." Under the particular circumstances of this case, it cannot be said that this error was

harmless, since there is a reasonable possibility that the jury could have reached another verdict had it not heard such testimony (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *Matter of State of New York v Walter R.*, 118 AD3d 714, 716 [2014]; *Matter of State of New York v Adrien S.*, 114 AD3d 862, 864 [2014]).

Moreover, we agree with the appellant that the Supreme Court erred in denying his motion for a mistrial on the ground that the appellant was unduly prejudiced by Dr. Katsavdakis's testimony that a previous court made a finding of probable cause to believe that he suffers from a mental abnormality (*see Matter of State of New York v L.T.*, 24 Misc 3d 1225[A], 2009 NY Slip Op 51615[U], *5 [Sup Ct, NY County 2009]; *Matter of State of New York v Davis*, 22 Misc 3d 318, 321-322 [2008]). That error was compounded when, in response to the appellant's objection, the court asked, "[c]an we stipulate to that?"

We also agree that the Supreme Court erred in permitting testimony concerning the appellant's youthful offender adjudication since the underlying offense—grand larceny—does not constitute "information relevant to a determination of whether [the appellant] is a sex offender requiring civil management" (Mental Hygiene Law § 10.08 [c]; *see generally Matter of State of New York v John S.*, 23 NY3d 326, 341 [2014]). The State's contention that the grand larceny offense is relevant to the issue of whether the appellant has "serious difficulty" in controlling his conduct is without merit in light of the fact that the statute is only concerned with the "commission of conduct constituting a sex offense" and not criminality in general (Mental Hygiene Law § 10.03 [i]).

In light of our determination, we need not address the appellant's remaining contentions. Mastro, J.P., Dickerson, Maltese and Barros, JJ., concur.