People v Curry (2017 NY Slip Op 09184)





People v Curry


2017 NY Slip Op 09184


Decided on December 27, 2017


Appellate Division, Second Department


Eng, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 27, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RANDALL T. ENG, P.J.
JOHN M. LEVENTHAL
LEONARD B. AUSTIN
JEFFREY A. COHEN, JJ.


2016-01946

[*1]People of State of New York, respondent, 
v
Chealique Curry, appellant.



APPEAL by the defendant from an order of the Supreme Court (Matthew J. D'Emic, J.), dated February 10, 2016, and entered in Kings County, which, after a hearing, designated him a level two sex offender pursuant to Correction Law article 6-C.



Paul Skip Laisure, New York, NY (Jenin Younes of counsel), for appellant.
Eric Gonzalez, Acting District Attorney, Brooklyn, NY (Leonard Joblove, Joyce Adolfsen, and Daniel Berman of counsel), for respondent.



ENG, P.J.


OPINION & ORDER
The Sex Offender Registration Act (see Correction Law art 6-C; hereinafter SORA), New York's version of "Megan's Law," was enacted in response to the 1994 rape and murder of a seven-year-old child by a convicted sex offender who lived across the street from her home. When the Legislature passed SORA into law, it required the establishment of a board of examiners of sex offenders (hereinafter the Board), composed of "experts in the field of the behavior and treatment of sex offenders" (Correction Law § 168-l[1]), and charged the Board with the responsibility of developing "guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to the public safety" (Correction Law § 168-l[5]). Acting on this statutory mandate, the Board created a risk assessment instrument (hereinafter RAI) to be used as a tool in determining a sex offender's risk of reoffense and threat to public safety. At issue on this appeal is whether the fact that an offender scores as being at a lower risk to reoffend on a different type of assessment instrument is a mitigating factor that may support a downward departure from the offender's presumptive risk level as determined by using the RAI. We conclude that a lower risk score on a different assessment instrument is not a circumstance which, standing alone, may be considered a mitigating factor, and that the Supreme Court thus properly denied the defendant's request for a downward departure on this ground.
The defendant's conviction of sexual abuse in the first degree stems from acts committed on February 16, 2011, when he was 31 years old. On that date, the defendant went to the apartment of his then 22-year-old former girlfriend. He banged on the front door demanding that the victim let him in, and threatened to break in through a window if she refused to do so. The victim let the defendant into her apartment, and once inside, the defendant asked to see the victim's phone. When the victim refused to show the defendant her phone, he threatened to beat her. The victim attempted to leave the apartment through the front door, but the defendant stopped her. She then tried to leave through a window. The defendant grabbed her wrist, pushed her onto a sofa, and slapped her face twice, telling her that if she did not give him her phone, she would be in the hospital. After the victim gave the defendant her phone, the defendant threw her onto her bed, removed her pants, and bit her neck and buttocks. The defendant then raped the victim as she struggled and told him to stop.
For these acts, the defendant was charged with multiple crimes, including rape in the first degree and sexual abuse in the first degree. The defendant eventually pleaded guilty to sexual abuse in the first degree in satisfaction of the indictment, and was sentenced in July 2013 to a period of five years of imprisonment and a five-year period of postrelease supervision.
In anticipation of the defendant's release from incarceration, in November 2015, the Board prepared an RAI which scored the defendant 95 points, indicating that he was at moderate risk of reoffending and should be presumptively classified a level two sex offender. Specifically, in the section of the RAI that considers the nature of the offense, the Board scored the defendant 15 points for the infliction of physical injury, and 25 points for engaging in sexual intercourse with the victim. In the section that considers the offender's criminal history, the Board scored the defendant 15 points for a prior history of nonviolent felony offenses, and 15 points for a history of drug or alcohol abuse. Finally, in the section that considers postoffense behavior, the Board scored the defendant 15 points for his refusal to participate in treatment, and 10 points for unsatisfactory conduct while incarcerated. In its accompanying Case Summary, the Board recommended against a downward departure, pointing out that while the defendant was in custody, he was additionally convicted of the felony offense of attempted promoting prison contraband in the first degree, and that he had been removed from sex offender treatment for disciplinary reasons and was now refusing to participate.
In February 2016, the Supreme Court conducted a hearing to determine the defendant's risk level. At the start of the hearing, defense counsel noted that the defendant was not contesting the points scored on the RAI. However, defense counsel urged the court to grant the defendant a downward departure, pointing out that this was the defendant's first sex offense, that he had pleaded guilty, and that he would be under supervision until 2021. Defense counsel further maintained that it was "noteworthy" that the defendant had scored favorably on two actuarial instruments used to assess the risk of reoffense. More specifically, the defendant scored as a low risk on the Vermont Assessment of Sex Offender Risk-2 (hereinafter the Vermont Assessment), and as a moderate-to-low risk on the Static-99R [FN1]. Although defense counsel acknowledged that the Vermont Assessment had not assigned points for the defendant's refusal to participate in treatment, she argued that even with the addition of one point for this factor, the defendant "would only be one point above low on the Vermont Assessment and he would still be on the cusp." The prosecutor opposed the request for a downward departure, pointing out that the Vermont Assessment and the Static-99R were not the assessment instruments relied upon in New York, and that this State instead relied upon the RAI that it was the Board's job to prepare. The prosecutor also noted that "even if one were to give the Vermont Assessment any credence," the additional point the defendant admitted he should have been scored on that instrument placed him "into the moderate-low range, which is commensurate with the Level 2 sex offense."
In an order dated February 10, 2016, the Supreme Court designated the defendant a level two sex offender in accordance with his presumptive risk level as assessed by the RAI, thus effectively denying his request for a downward departure.
The defendant now appeals, contending that the Supreme Court abused its discretion by denying his request for a downward departure. He maintains that a departure was warranted because he was a first-time sexual offender who pleaded guilty and was deemed a low risk by the Static-99R, a reliable actuarial risk assessment instrument. The defendant submits that both the Static-99R and the Vermont Assessment "are relied on throughout the world," and that the Static-99R "is considered to be extraordinarily accurate." Indeed, the defendant asserts, relying on a 2009 decision of the New York County Supreme Court, that the Static-99R is more accurate than New York's RAI because the Static-99R is frequently updated based upon the latest scientific data about sex offenders. In response, the People maintain that the Supreme Court properly denied the defendant's request for a downward departure. The People contend that since the Static-99R and the Vermont Assessment "are all used for the same purpose — to predict the probability that the offender will re-offend — defendant's advocating for the SORA hearing court to use the Static-99R [*2]or the [Vermont Assessment] as a mitigating factor in this case because it resulted in a lower score is simply an attempt to have the SORA hearing court substitute a different, more favorable method to assess the defendant's risk to re-offend than the RAI."
We begin our analysis by examining New York's statutory scheme for the registration of sex offenders and the legislative intent underlying it. One of the Legislature's chief goals in enacting SORA was to protect the public from "the danger of recidivism posed by sex offenders" (People v Cook, 29 NY3d 121, 125 [internal quotation marks omitted]; see People v Stevens, 91 NY2d 270, 275). SORA seeks to achieve this goal by requiring individuals convicted of sex offenses to register with law enforcement officials, and authorizing information about these individuals to be disseminated to the public (see People v Mingo, 12 NY3d 563, 570). As a first step in implementing the statutory registration scheme, the Legislature directed the establishment of the Board, to be composed of "experts in the field of the behavior and treatment of sex offenders," and charged the Board with the responsibility of developing "guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to the public safety" (Correction Law § 168-l[1], [5]). The Legislature specified that these guidelines "be based upon, but not limited to," a prescribed list of factors provided in the statute (Correction Law § 168-l[5]). When the Board drafted the guidelines required by SORA, it created the RAI to be used as a tool to assess an offender's risk level by assigning numerical points for various risk factors, including those prescribed by Correction Law § 168-l(5) (see People v Cook, 29 NY3d at 125). According to the Board, "[a]fter much discussion," it "opted to create an objective assessment instrument that would provide a risk level combining risk of reoffense and danger posed by a sex offender" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 3 [2006] [hereinafter Guidelines]). The RAI "includes factors related to the offender's current offense, his criminal history, his post-offense behavior (e.g., his conduct while confined for the offense), and his planned release environment" (id.), and calculates an offender's presumptive risk level by adding the points that the offender scores for the risk factors listed in each category (see id.; People v Wyatt, 89 AD3d 112, 117). If an offender's total score on the RAI is 70 points or less, the offender is presumptively a level one (low risk) offender (see Guidelines at 3). If the score is more than 70 but less than 110, the offender is presumptively a level two (moderate risk) offender; if 110 or more, the offender is presumptively a level three (high risk) offender (see id.). The offender's risk level determines the amount of information that can be disseminated about the offender to the public, the extent and frequency of the offender's reporting requirements, and the duration of those requirements (see id.).
However, the risk level calculated by aggregating the points assigned on the RAI is only "presumptive" because "the Board or court may depart from it if special circumstances warrant" (id. at 4; see People v Johnson, 11 NY3d 416, 421; People v Wyatt, 89 AD3d at 119). Indeed, the Guidelines acknowledge that an objective RAI, "no matter how well designed, will not fully capture the nuances of every case" (Guidelines at 4). Thus, the court has the discretion to depart from the presumptive risk level where "there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not taken into account by the guidelines" (id.; see People v Gillotti, 23 NY3d 841, 861; People v Johnson, 11 NY3d at 421). However, "utilization of the risk assessment instrument will generally result in the proper classification in most cases so that departures will be the exception not the rule'" (People v Guaman, 8 AD3d 545, 545, quoting Guidelines at 4; see People v Howard, 27 NY3d 337, 341; People v Walker, 146 AD3d 824).
An offender seeking a downward departure from the presumptive risk level has the initial burden of (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is not otherwise taken into account by Guidelines, and (2) establishing the facts in support of its existence by a preponderance of the evidence (see People v Gillotti, 23 NY3d at 861; People v Rose, 146 AD3d 911, 912; People v Wyatt, 89 AD3d at 128). Only if this twofold showing is made does the court have the "discretion to grant or deny the departure application based upon an examination of all circumstances relevant to the offender's risk of reoffense and danger to the community" (People v Wyatt, 89 AD3d at 128; see People v Rocano-Quintuna, 149 AD3d 1114, 1115; People v Kohout, 145 AD3d 922).
The question of "[w]hether a particular factor falls within the definition of an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines' is a legal question for the court, based upon an interpretation of the Guidelines and SORA. Where the alleged factor is taken into account by the Guidelines or is not [*3]related to the risk of reoffense and danger to the community, as a matter of law a departure is not warranted" (People v Wyatt, 89 AD3d at 121, quoting People v Johnson, 11 NY3d at 421).
Here, the defendant's request for a downward departure was largely based upon the fact that he scored in the "moderate-low" risk category on the Static-99R, and the "low" risk category on the Vermont Assessment. Although copies of the Static-99R and Vermont Assessment appear to have been provided to the Supreme Court at the SORA hearing, the defendant offered no evidence regarding the reliability of these assessment instruments [FN2] The Static-99 is a 10-item actuarial assessment instrument created by R. Karl Hanson, Ph.D., and David Thornton, Ph.D., for use with adult male sexual offenders who are at least 18 years of age at the time of release to the community. The Static-99 instrument looks only at "static, i.e., unchanging, historical events" (Matter of State of New York v Rosado, 25 Misc 3d 380, 388 [Sup Ct, Bronx County]). In 2012, the age item for the scale was updated, creating the Static-99R. According to the authors of its coding rules, the Static-99R is the most widely used sex offender risk assessment instrument in the world, and is extensively used in the United States, Canada, the United Kingdom, Australia, and many European nations (see http://www.static99.org). The Vermont Assessment is similarly designed to assess risk among adult males who have been convicted of at least one qualifying sex offense. It is composed of a 12-item Reoffense Risk Scale and a 4-item Severity Factors Checklist. The Reoffense Risk Scale is statistically derived and is designed to assess risk for sexual and violent recidivism. The Severity Factors Checklist is clinically derived and is designed to describe the severity of sex offenses (see VASOR-2 Manual October 2013). However, an offender's score is calculated by adding only the points scored on the 12-factor Reoffense Risk Scale.
. Thus, his appellate arguments concerning the flaws in New York's RAI, and the superior reliability of the Static-99R, are primarily drawn from the decision of the Supreme Court, New York County, in People v Santos (25 Misc 3d 1212[A], 2009 NY Slip Op 52040[U] [Sup Ct, NY County]) rather than from evidence presented at the SORA hearing. While the issue of whether a low or moderate-low score on the Static-99R entitles a defendant to a downward departure has not been expressly addressed by this Court, the Appellate Division, First Department, has held that "a low score on the Static-99 . . . is not by itself sufficient for a downward departure because, unlike the SORA Risk Assessment Instrument, the Static-99 does not take into account the nature of the sexual contact with the victim or the potential harm that could be caused in the event of reoffense" (People v Rodriguez, 145 AD3d 489, 490; see People v Roldan, 140 AD3d 411, 412 [noting that "(t)he egregiousness of the underlying crime indicated a danger that a reoffense by defendant would cause a high degree of harm," and that he had "not shown that his low-moderate Static-99 score, or any of the other factors he cites, warrants a downward departure"]). More recently, the First Department also observed that the "probative value" of an offender's Static-99 score "is limited because that assessment inadequately considers the underlying sex crime and the potential for harm in the event of reoffense" (People v Cruz, 154 AD3d 610, 610).
We reject the defendant's contention that a low or moderate-low score on an alternate risk assessment instrument may qualify, standing alone, as an appropriate mitigating factor. The Static-99R and Vermont Assessment are simply different assessment tools which consider a variety of risk factors, some of which are taken into account by New York's RAI, and some of which are not. In contrast to the RAI, which seeks to measure both the likelihood of reoffense and the danger posed by an offender, neither the Static-99R nor the Vermont Assessment attempts to capture the danger of harm posed by a particular offender should he reoffend. Furthermore, neither the Static-99R nor the Vermont Assessment accounts for many of the specific factors that the Legislature mandated be considered in formulating the Guidelines, and which are reflected in the RAI. Some of these specific factors relate to the likelihood of risk of reoffense, such as the age of the offender at the time of the commission of the first sex offense, the number, date, and nature of prior offenses, and the relationship between the sex offender and the victim (see Correction Law § 168-l[5][a][v]; [b][i], [iii]). Other specific factors relate to the danger posed by the offender, such as whether the sex offender committed a felony sex offense against a child, and whether the offense involved the use of a weapon, violence, or infliction of serious bodily injury (see Correction Law § 168-l[5][a][iv]; [b][ii]). Some of the prescribed factors relate to both the likehood of reoffense and the danger of the offender, such as whether the sex offender has a mental abnormality or personality [*4]disorder that makes him or her likely to engage in predatory sexually violent offenses (see Correction Law § 168-l[5][a][i]).
To recognize a low or moderate-low score on the Static-99R and/or the Vermont Assessment as a mitigating factor would, in essence, permit SORA courts to rely on those instruments in lieu of the RAI promulgated by the Board and designed to account for the specific factors prescribed by the Legislature. This would amount to a rejection of the RAI in favor of assessment instruments that serve the more limited function of attempting to measure risk of reoffense alone, in clear contravention of the legislative intent to require consideration of both risk of reoffense and the danger of harm posed by reoffense (see People v Encarnacion, 52 Misc 3d 1219[A], 2016 NY Slip Op 51224[U] [Sup Ct, Richmond County]). While this Court has observed that " [t]he use of actuarial risk assessment instruments is scientifically accepted as a means to measure the risk of recidivism'" in the context of proceedings for the civil management of sex offenders pursuant to Mental Hygiene Law article 10 (Matter of State of New York v Dean G., 140 AD3d 972, 973, quoting Matter of State of New York v Ian I., 127 AD3d 766, 768), SORA is not aimed solely at measuring the risk of reoffense. The danger of harm posed by reoffense is an equally important consideration in fulfilling the statutory mandate of SORA and must be addressed.
Even were we to accept the proposition that the fact that a sex offender received a more favorable assessment on the Static-99R or Vermont Assessment could constitute an appropriate mitigating factor, we would find that the defendant failed to sustain his burden of proof in support of his request for a downward departure on this basis. The defendant's risk level as calculated by the Static-99R and Vermont Assessment do not differ significantly from his presumptive risk level on the RAI. Although the defendant was scored a low risk when the Vermont Assessment was completed in 2014, he subsequently refused to participate in sex offender treatment, and at the SORA hearing, defense counsel acknowledged that an additional point would have to be assessed for this refusal, bringing his score into the moderate-low range. Since the defendant actually scored in the moderate-low range rather than the low range on both the Static-99R and the Vermont Assessment, these scores do not demonstrate that his risk to the public was overassessed by New York's RAI, which scored him as being at moderate risk (see People v Roldan, 140 AD3d at 412 [finding that the defendant's "low-moderate" score on the Static-99R did not constitute a mitigating factor and that, in any event, the score appeared consistent with the RAI, which scored the defendant at the low end of a level two]).
Our conclusion that an offender's lower risk score on an alternate risk assessment instrument is not itself a mitigating factor that can support a downward departure does not necessarily mean that an offender cannot rely upon one or more of the individual risk factors included on such instruments to demonstrate that he or she is at a lower risk of reoffense or poses less of a danger to the community. While some of the risk factors included on the Static-99R and Vermont Assessment are also taken into account by the RAI, other risk factors are unique to those instruments. Here, however, the defendant has not identified any specific, unique risk factors on the Static-99R or Vermont Assessment that could qualify as a mitigating factor.
Finally, the remaining factors cited by the defendant in support of his request for a downward departure are adequately taken into account by the RAI. The fact that this was the defendant's first sex offense is taken into account by risk factor 9, which assesses points against an offender based on the nature and extent of his or her prior criminal history (see People v Rocano-Quintuna, 149 AD3d at 1115; People v Maldonado, 147 AD3d 798, 799; People v Wyatt, 89 AD3d at 130-131). The fact that the defendant will remain under specialized supervision until 2021 is also accounted for on the RAI because the defendant was scored 0 points under risk factor 14, rather than the 15 points he would have received for release without supervision, or the 5 points he would have received for release with nonspecialized supervision (see People v Lewis, 143 AD3d 604; People v Santiago, 137 AD3d 762, 764).
In the absence of an appropriate mitigating factor and proof of that factor by a preponderance of the evidence, as a matter of law the Supreme Court did not have the discretion to depart from the defendant's presumptive risk level (see People v Rocano-Quintuna, 149 AD3d at 1115; People v Wyatt, 89 AD3d at 128). Accordingly, the court properly designated the defendant a level two sex offender, and the order is affirmed.
LEVENTHAL, AUSTIN and COHEN, JJ., concur.
ORDERED that the order is affirmed, without costs or disbursements.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: The Static-99R relied upon by the defendant was prepared by a social worker at the defendant's prison on June 6, 2014. The defendant scored a "3" on the Static-99R, placing him at "moderate-low" risk of reoffending as measured by that instrument. The Vermont Assessment was prepared by the same social worker on June 13, 2014, and scored the defendant a "5," placing him at "low" risk of reoffending as measured by that instrument.