OPINION OF THE COURT
Juan M. Merchan, J.
Findings of Fact
This matter came before the court on August 8, 2012 for a Sex Offender Registration Act hearing (hereinafter SORA hearing) (Correction Law, art 6-C, § 168). Defendant scored 115 points on the SORA risk assessment instrument (hereinafter RAI) thus classifying him a level three — high risk to re-offend. By way of motion he now seeks a downward departure to level two — moderate risk to re-offend classification. The People oppose defendant’s motion and contend that defendant was properly assessed 115 points. The People further argue that defendant should be classified a level three risk to re-offend even if this court finds that he was improperly assessed 115 points.
On July 9, 2007, the defendant, Steven Vasquez, who was 15 years old at the time of this incident, and his codefendant entered the victim’s apartment by climbing up the back fire escape and into her window. The defendant took a BB gun, which belonged to the victim’s roommate, pointed it at the victim and told her to “get back.” Thereafter, defendant and co-defendant proceeded to steal property from the victim’s apartment. They then gagged and bound the victim’s hands and feet *410 behind her back. The defendant opened the victim’s shirt, pulled down her underwear and vaginally raped the victim while she was still bound. Defendant raped the victim two additional times and ejaculated on her face, hair and arm.
On February 11, 2010, defendant pleaded guilty to four counts of rape in the first degree (Penal Law § 130.35 [1]), a class B violent felony, burglary in the second degree (Penal Law § 140.25 [1] [d]), a class C violent felony, and robbery in the second degree (Penal Law § 160.10 [2] [b]), a class C violent felony. Defendant was sentenced to an aggregate term of 2V2 to l1!2 years in prison. Defendant was conditionally released on August 22, 2012, and is currently under specialized community supervision until January 7, 2015.
The sex offense for which defendant was convicted requires him to register in New York as a sexually violent offender. Defendant scored 115 points on the RAI. Specifically, defendant was assessed 30 points for being armed with a dangerous instrument; 25 points for having sexual intercourse with the victim; 20 points because the victim suffered from mental disability, incapacity or physical helplessness; 20 points because the victim was a stranger; 10 points because defendant was under 20 years of age at the time of his first act of sexual misconduct; and 10 points for unsatisfactory conduct while confined.
On July 27, 2012, prior to the SORA hearing, defendant submitted a memorandum in support of his motion for a downward departure from his presumptive risk level three adjudication. On August 6, 2012, the People filed a memorandum in opposition to defendant’s motion. On August 7, 2012, defendant filed a reply affirmation in response to the People’s memorandum. On August 8, 2012, this court conducted a SORA hearing to determine defendant’s sex offender risk level.
Defendant moves for a downward departure from his presumptive risk level three adjudication. Defendant is a 20-year-old man with moderate brain damage caused by chronic lead poisoning. He claims that a level three adjudication and the residency restrictions that come with such a finding would force him to live in a homeless shelter and deprive him of social services and treatment critical to his rehabilitation and reintegration into the community. Defendant argues that the resulting instability would in all certainty increase the risk of recidivism rather than provide public safety, which would be effectively protected by a level two classification in light of the registration requirements and conditions imposed upon sex offenders classified at that level.
*411 Defendant further contends that the Board of Examiners of Sex Offenders improperly assessed 30 points for being armed with a dangerous instrument during the commission of the crime. Specifically, defendant argues that the BB gun used in the offense does not constitute a dangerous instrument as defined under the Penal Law. Therefore, defendant contends that only 10 points should be assessed under this category for the use of forcible compulsion.
In addition, defendant disputes his assessment of 10 points for being under 20 years of age at the time he committed his first act of sexual misconduct. According to the defendant, this risk factor refers in actuality to a defendant’s age at the time of previous criminal conduct and not to a defendant’s age at the time of the instant offense. Lastly, defendant opposes his assessment of 10 points for unsatisfactory conduct while confined based on a conviction for attempting to promote prison contraband in the first degree. Defendant contends that this assessment diminishes the significant progress he made while incarcerated and that, though a serious offense, other defendants are assessed 10 points under this factor for behavior significantly more serious than defendant’s conduct.
The People oppose defendant’s application and support the recommendation of the Board that defendant be classified a level three sex offender. The People alternatively argue that even if this court were to score the defendant a level two risk to re-offend based on the RAI, an upward departure is warranted based on the serious nature of this crime, defendant’s felony conviction while incarcerated involving possession of pornography while confined and his denial of responsibility for the instant offense. In addition, the People claim that defendant’s arguments that a level three classification would limit his access to social services and render him homeless are purely speculative and that defendant may explore other residential options. The People further argue that the Board properly assessed the defendant 30 points for being armed with a dangerous instrument.
Moreover, the People argue that the Board properly assessed 10 points for defendant’s age at the first act of sexual misconduct. Specifically, the People contend that the plain language and underlying rationale of factor 8 do not refer to “prior crimes,” and that as those who offend at a young age are more prone to re-offend, this factor properly applies to the first act of sexual misconduct, irrespective of whether this was the subject *412 of the instant conviction. Lastly, the People argue that defendant’s unsatisfactory behavior while incarcerated should not be minimized given that he was convicted of a new felony while in prison and that he was involved in smuggling contraband.
Upon review of the motions and all evidence presented to this court in support of and opposition thereto, and after due deliberation thereon, defendant’s application for a downward departure to a risk level two is hereby granted.
Conclusions of Law
Correction Law § 168-n requires a court making a risk level determination pursuant to SORA to render an order that “an offender is a sexual predator, sexually violent offender, or predicate sex offender . . . prior to the discharge, parole, release to post-release supervision or release of such offender.” In addition, applying the guidelines established in Correction Law § 168-Z, the court must make a determination “with respect to the level of notification, after receiving a recommendation from the board.” (Correction Law § 168-n [1], [2].)
According to SORA guidelines, specific risk factors are measured to determine whether a defendant should be classified as a level one sex offender in cases where the risk of repeat offense is low, level two if the risk of repeat offense is moderate and level three where the risk of repeat offense is high and “there exists a threat to the public safety.” (Correction Law § 168-Z [6] [c].)
In cases where the defendant is designated a level two or level three sex offender, the law enforcement agencies with jurisdiction over the defendant should be notified and may disseminate relevant information, including a photograph and description of the offender, exact name and any aliases used by the sex offender, exact address, background information such as the offender’s crime of conviction, mode of operation, type of victim targeted, the name and address of any institution of higher education at which the sex offender is enrolled, attends, is employed or resides and the description of special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender. (Correction Law § 168-Z [6] [b], [c].)
Any entity receiving information on a level two or level three sex offender may disclose or further disseminate such information at its discretion. This information should be made available to the public upon request. Further, law enforcement agencies *413 are required to notify vulnerable organizational entities such as schools, parks, libraries, school bus transportation companies, day care centers, nursery schools, preschools, neighborhood watch groups, community centers, civic associations, nursing homes, victims’ advocacy groups and places of worship of any level two and three sex offenders within its jurisdiction. (Correction Law § 168-Z [6] [b], [c].)
Whether classified as a sexually violent offender under level two or level three, the defendant will be subject to registration and verification as a sex offender for life. (Correction Law § 168-h.) If classified as a level two sex offender, the defendant would have to register by mail annually and in person every three years. (Correction Law § 168-f [2].) By contrast, if he were classified as a level three sex offender, he must personally verify his address every 90 calendar days with the local law enforcement agency in the jurisdiction where he resides. (Correction Law § 168-h [3].) In addition, as a level three sex offender, defendant is prohibited from living within 1,000 feet of a school while he is on parole supervision. (Executive Law § 259-c [14].)
Under the law,
“[i]n making the determinations the court shall review any victim’s statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations.” (Correction Law § 168-n [3].)
Thus, the role of the court is to examine all relevant evidence and not merely to adopt the recommendation set forth in the RAI. (People v Reynolds, 68 AD3d 955, 956 [2d Dept 2009].) The court “possesses the discretion to impose a lower or higher risk level if it concludes that the factors in the RAI do not result in an appropriate designation.” (People v Mingo, 12 NY3d 563, 568 n 2 [2009].)
Pursuant to Correction Law § 168-n (3), the People bear the burden of proving the facts supporting the determinations by clear and convincing evidence. A departure from a sex offender’s presumptive risk level generally is only warranted where “there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines.” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]; People v Fernandez, 91 AD3d 737 [2d Dept 2012].)
*414 However, while a court may in the exercise of discretion depart from the presumptive risk level, “utilization of the risk assessment instrument will generally ‘result in the proper classification in most cases so that departures will be the exception not the rule.’ ” (People v Guaman, 8 AD3d 545, 545 [2d Dept 2004], quoting Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [Nov. 1997].) Therefore, a defendant seeking a downward departure has the initial burden of
“(1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence.” (People v Wyatt, 89 AD3d 112, 128 [2d Dept 2011].)
This court finds that defendant is entitled to a downward departure to a level two classification due to an improper assessment of points. Specifically, defendant should have been assessed 10 points and not 30 under risk factor 1, thus bringing his total score on the RAI down to 95 points. Further, defendant has met his burden of establishing, by a preponderance of the evidence, the existence of mitigating factors not taken into account by the Guidelines or the RAT.
Defendant was improperly assessed 30 points under risk factor 1 as having been armed with a dangerous instrument during the commission of the underlying offense. In establishing a defendant’s risk level assessment pursuant to SORA, the People bear the burden of establishing the facts supporting the determination sought by clear and convincing evidence. (Correction Law § 168-d [3]; People v Mingo, 12 NY3d 563 [2009].) In this case, the People have not met their burden with regard to this factor.
Pursuant to Penal Law § 10.00 (13), dangerous instrument means “any instrument, article or substance, including a ‘vehicle’ as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.” For purposes of the RAI, the Board has adopted the Penal Law definition of “dangerous instrument.” (SORA Risk Assessment Guidelines and Commentary at 8.)
*415 In the case at bar, it is undisputed that when defendant entered the victim’s room, she yelled “what are you doing in here.” Defendant then pulled out a BB gun and stated “get back.” The defendant and codefendant then proceeded to take property from the victim’s room. The victim was thereafter bound and raped. (Grand jury tr at 10-14.) In order for a BB gun to be classified as a dangerous instrument, “it must be shown that the BB gun was loaded and operable or that it was used as a bludgeoning object.” (People v Swain, 46 AD3d 1157, 1158 [3d Dept 2007] [citations omitted].) Following the SORA hearing in Swain, the court there held that evidence that defendant was armed with a BB gun, without more, does not constitute clear and convincing evidence that the BB gun was either loaded and operable or used as a bludgeoning device during the commission of the offense. Accordingly, the court concluded that defendant was not armed with a dangerous instrument and that he should not have been assessed 30 points under risk factor 1. (Id.)
As in Swain, there is no evidence here that the BB gun was either loaded and operable or used or threatened to be used as a bludgeon or club. In fact, the People concede that defendant’s actions with respect to the BB gun were limited to pointing the gun at the victim and ordering her to “get back.”
The People’s initial theory of the case, which was supported by the evidence, was that defendant “displayed what appeared to be a pistol.” Defendant was not indicted on charges pertaining to the use or possession of a dangerous instrument. Defendant pleaded guilty to rape in the first degree under the theory that he engaged in sexual intercourse with another person “[b]y forcible compulsion” (Penal Law § 130.35 [1]) and robbery in the second degree under the theory that he displayed “what appealed] to be a pistol, revolver, rifle, shotgun, machine gun or other firearm” (Penal Law § 160.10 [2] [b]). More importantly, instead of charging the defendant with burglary in the second degree under the theory that defendant “[u]se[d] or threaten[ed] the immediate use of a dangerous instrument” under Penal Law § 140.25 (1) (c), defendant was charged with and pleaded guilty to burglary in the second degree under paragraph (d) for displaying “what appear[ed] to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.” (Penal Law § 140.25 [1] [d].)
Therefore, the charges brought against the defendant and the People’s theory of the case at the time the defendant pleaded *416 guilty sharply contradict the prosecutor’s argument at the SORA hearing that defendant was armed with a dangerous instrument. (Cf. People v Dodt, 61 NY2d 408 [1984] [People’s theory of the case supported conclusion that gun used during the commission of the offense was readily capable of causing death or other serious physical injury].) By contrast, such charges and the acts committed by the defendant are consistent with the use of forcible compulsion in conformity with the assessment of 10 points under risk factor 1.
The People rely on several cases, including the Court of Appeals decision in People v Pettigrew (14 NY3d 406 [2010]), in support of their proposition that a BB gun can be used as a dangerous instrument, an argument that this court is not disputing. However, unlike the cases cited by the People, the evidence herein clearly demonstrates that defendant did not threaten to shoot the victim and did not use or threaten to use the BB gun as a bludgeon or club. (See People v Hall, 50 AD3d 1467 [4th Dept 2008] [defendant’s plea allocution that he pointed a BB gun at the victim’s temple did not indicate that it was used as a dangerous instrument within the meaning of Penal Law § 10.00 (13)]; People v Wasson, 266 AD2d 701 [3d Dept 1999] [holding that the fact that defendant used a broken BB gun during the commission of a robbery and lack of any other evidence that such gun was used in a violent manner were sufficient to conclude that the BB gun could not be considered a dangerous instrument]; People v Alston, 21 Misc 3d 1133[A], 2008 NY Slip Op 52333[U] [Sup Ct, Queens County 2008] [evidence that the BB gun was pointed at the victim during a robbery was not sufficient to infer that the gun was used as a dangerous instrument].)
Thus, in the absence of evidence that defendant was armed with a “dangerous instrument” within the meaning of the Penal Law, the Board improperly assessed 30 points under factor 1. However, since defendant did use forcible compulsion in the commission of the crime, 10 points should be assessed in this category. Based upon the improper assessment under risk factor 1, defendant must be scored a total of 95 points, which classifies him as a level two sex offender.
However, assuming that the Board did not err in the assessment of points under risk factor 1, this court, in the exercise of its discretion, concludes that defendant is nonetheless entitled to a downward departure to a risk level two classification.
As a threshold matter, this court reiterates that defendant is a 20-year-old man with moderate brain damage as a result of *417 his exposure to lead poisoning when he was a child, a condition which was sufficiently established through documentary evidence and expert testimony at the Huntley/Dunaway hearing conducted before this court in November of 2009. As a result, defendant has an overall IQ of 68 and a history of mental health and behavioral, social and intellectual deficits. (See OCFS-Brookwood Secure Center Sex Offender Assessment Report [hereinafter Brookwood Report].) It is undisputed that defendant is in need of intensive therapy, educational and vocational services tailored to his unique neurological deficits, a structured environment, a community-based support system and substantial supervision. (Id. at 15.)
Defendant’s sex offender status, violent felony conviction and brain damage, along with his cognitive, emotional and psychological challenges will pose significant obstacles to defendant’s rehabilitation and reintegration into the community. A level three sex offender determination will prevent defendant from living with his family. Although members of his family, including his mother and his cousin, are willing to house the defendant, supervise him, monitor his progress and ensure that he receives the social services, treatment and intensive care he needs, the Department of Corrections and Community Supervision denied the defendant permission to live with any member of his family upon his release based on his presumptive classification as a level three sex offender because both his mother and cousin live within 1,000 feet of a school. Defendant was recently informed that the only housing option available to him is the Bellevue Men’s Shelter.
Lack of adequate supervision and stability, along with inevitable isolation from his family and poor living conditions in a shelter home, may greatly increase defendant’s likelihood to re-offend. At home and under the supervision of a family member, however, defendant will be provided with a stable and supportive environment as well as strong encouragement to comply with treatment and parole conditions. Defendant, with his low level of intellectual functioning, will benefit from assistance in remembering appointments and navigating the social services system. By contrast, the shelter will not offer the necessary supervision or assistance with simple personal matters such as keeping appointments with a therapist. Defendant will be rendered particularly vulnerable to other residents, exposed to crime and most likely subjected to homelessness, thereby increasing his risk of recidivism. Given defendant’s age and *418 cognitive impairments, his needs for stable housing, adequate treatment and social services are particularly acute. Accordingly, a level three sex offender designation would be counterproductive and serve no societal benefit.
This court notes that defendant’s sex offender assessment from Brookwood, which was relied upon by the People at the SORA hearing, concludes that defendant is “at a moderate risk for both sexually re-offending and offending non-sexually.” (Brookwood Report at 15.) In addition, the People conceded that defendant may indeed be exposed to potential homelessness and confront barriers to accessing services as a level three sex offender. Specifically, the People’s response affirmation recognized the difficulty of finding alternative housing in New York City not within 1,000 feet of a school if he is designated a level three sex offender.
Nonetheless, the People submit that once defendant “experiences some substantial and unwarranted difficulty ... he is free to petition this Court for a modification of his classification level.” (People’s affirmation in response to defendant’s motion at 9.) This court finds this proposal both impractical and unacceptable. A level three classification under these circumstances will undermine the non-punitive and remedial nature of SORA, which rather than imposing punishment for a past crime, is a statute intended to prevent future crime. (Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 752 [2007]; People v Gravino, 14 NY3d 546, 556 [2010].) Based on the evidence presented to this court, the “substantial and unwarranted” hardship defendant would experience as a level three sex offender and the significant risk of recidivism, which would result from such designation, are foreseeable for this court. Given that there would be no benefits to society from such a designation, a modification of defendant’s presumptive risk level is warranted.
Accordingly, in the exercise of this court’s discretion and upon examination of all the circumstances relevant to the defendant’s risk to re-offend, the presumptive threat posed to public safety, and the mitigating factors which were not taken into account by the Guidelines or the RAI, this court concludes that defendant is entitled to a downward departure to risk level two, even if he were properly assessed a level three classification on the RAI. The level two classification provides greater assurance that defendant will engage in treatment and services. It also allows for *419 a comprehensive support system, and the possibility that defendant will reside with his family, thereby enhancing the likelihood of successful rehabilitation and reintegration into the community. (People v McFarland, 35 Misc 3d 1243[A], 2012 NY Slip Op 51137[U] [Sup Ct, NY County 2012] [where the court concluded that forcing the defendant to live at the Bellevue Men’s Shelter as opposed to at home with his wife would increase defendant’s risk to re-offend].)
For the foregoing reasons, this court grants defendant’s application for a downward modification. Defendant is therefore classified a level two sexually violent offender.