OPINION OF THE COURT
Richard A. Molea, J.
On May 17, 2013, upon the appearance of the defendant with his assigned counsel, Diane Webster, Esq., and the appearance of Assistant District Attorney Laura Forbes, this court conducted a risk level determination proceeding under the dictates of article 6-C of the Correction Law, otherwise known as the Sex Offender Registration Act (hereinafter, SORA). Pursuant to the requirements of Correction Law § 168-d, this proceeding was conducted in a manner consistent with the guidelines set forth in subdivision (5) of Correction Law § 168-Z, which require the hearing court to determine the duration of the sex offender’s registration obligations under Correction Law § 168-h, the degree of risk of re-offense presented by the sex offender insofar *800 as same is relevant to the nature of the sex offender’s notification obligations under Correction Law § 168-i (6), and the designation of the sex offender as either a “sexually violent offender,” a “predicate sex offender” or a “sexual predator” within the meaning of Correction Law § 168-a (7). Upon completion of the instant SORA risk level determination proceeding, this court makes the following findings of fact and conclusions of law:
Findings of Fact
Upon entry of a guilty plea under the instant indictment on May 17, 2012, the defendant was convicted before this court of a single count of possessing an obscene sexual performance by a child as charged under count 1 of the instant indictment and in full satisfaction of the remaining 113 counts charged thereunder. In connection with the entry of his guilty plea, the defendant allocuted to knowingly having possessed a computer file on May 19, 2011 which depicted sexual conduct by a child of less than 16 years of age while knowing the content and character thereof. On September 6, 2012, the defendant was sentenced by this court to serve a definite one-year term of incarceration in the Westchester County Jail in conjunction with the imposition of the mandatory surcharge, DNA data bank fee, crime victim assistance fee, sex offender registration fee, and supplemental sex offender victim fee.
On May 1, 2013, the Board of Examiners of Sex Offenders (hereinafter, the Board) submitted a recommendation to the court through the filing of a risk assessment instrument, case summary, and designation recommendation, indicating that the defendant was a presumptive level one sex offender. On May 3, 2013, the court sent a letter to the defendant, which was copied to the Westchester County District Attorney’s Office and the Legal Aid Society of Westchester County, advising him of the court’s intention to conduct a risk assessment determination proceeding, the date of the proceeding, and his rights in connection therewith. On May 6, 2013, defendant’s former assigned attorney from the Legal Aid Society of Westchester County, Diane Webster, Esq., acknowledged receipt of the court’s May 3, 2013 letter and indicated that she would be representing the defendant, at his request, during the risk assessment determination proceeding to be conducted on May 17, 2013. On May 9, 2013, Assistant District Attorney Laura Forbes sent a letter and an amended risk assessment instrument (RAI) to the court on *801 behalf of the People, which was copied to Ms. Webster, recommending that the defendant be designated a level two sex offender and detailing the legal bases for their disagreement with the Board’s recommendation that the defendant was a presumptive level one sex offender. On May 13, 2013, Ms. Webster wrote a letter to the court, which was copied to the People, requesting that the court consider three annexed SORA-related court decisions and the “Scoring of Child Pornography Cases Position Statement 6/1/12” prepared by the Board (hereinafter, the Board’s position statement).
During the course of the instant risk assessment determination proceeding, the People submitted material for the court’s consideration, including the risk assessment instrument prepared by Assistant District Attorney Laura Forbes which was admitted into evidence as People’s exhibit 1, the RAI prepared by the Board which was admitted into evidence as People’s exhibit 2a, the case summary which was admitted into evidence as People’s exhibit 2b, the sex offender designation form which was admitted into evidence as People’s exhibit 2c, a copy of the instant indictment which was admitted into evidence as People’s exhibit 3, a copy of the defendant’s presentence investigation report which was admitted into evidence as People’s exhibit 4, the affidavit of Investigator Richard Corvinus which was admitted into evidence as People’s exhibit 5, and an optical compact disc containing files depicting images of child pornography. In reliance upon their submission of the above-referenced materials and the oral argument they presented, the People submit that the defendant should be designated a risk level two sex offender based upon the allocation of 95 points to his total risk factor score. As proposed by the People, the recommended total risk factor score of 95 points would be derived from the allocation of 30 points pursuant to RAI risk factor 3 “Number of victims,” 30 points pursuant to RAI risk factor 5 “Age of victim,” 20 points pursuant to RAI risk factor 7 “Relationship with victim,” and 15 points pursuant to RAI risk factor 14 “Supervision.” With respect to RAI risk factor 3, the People advance their argument that 30 points should be allocated to the defendant’s total risk factor score thereunder in reliance upon People’s exhibit 3 in evidence, as the grand jury returned the instant indictment upon findings that the defendant knowingly possessed more than three computer files depicting sexual conduct by more than three distinct children of less than 16 years of age. With respect to RAI risk factor 5, the People sup *802 port their argument that 30 points should be allocated to the defendant’s total risk factor score thereunder through their reliance upon People’s exhibit 5 in evidence, which indicates that more than 50 of the image files located on the defendant’s computer and hard disk drives contained images of children 10 years of age or less engaged in sexual performances. With respect to RAI risk factor 7, the People support their argument that 20 points should be allocated to the defendant’s total risk factor score thereunder through their reliance upon People’s exhibit 4 in evidence, which indicates that the defendant did not know any of the victims depicted in the pornographic images he possessed. With respect to RAI risk factor 14, the People support their argument that 15 points should be allocated to the defendant’s total risk factor score thereunder through their reliance upon their recognition that the defendant will not be supervised upon his release from incarceration. The People do not seek an adjudication of the defendant as either a “sexually violent offender,” a “predicate sex offender,” or a “sexual predator,” nor do they seek an upward departure from the defendant’s presumptive risk level two designation.
During the course of the instant risk assessment determination proceeding, the defense submitted a copy of the Board’s position statement for the court’s consideration, although never requesting that the document be marked or moved into evidence. In reliance upon their submission of the Board’s position statement and the oral argument they presented, the defense challenges the People’s recommendation in support of a risk level two designation and argues that the defendant should be designated a risk level one sex offender based upon the allocation of 45 points to his total risk factor score. Although the defense concedes the propriety of allocating 30 points pursuant to RAI risk factor 5 “Age of victim,” and 15 points pursuant to RAI risk factor 14 “Supervision,” the defense disputes the propriety of allocating 30 points to the defendant’s total risk factor score under RAI risk factor 3, as well as the allocation of 20 points under RAI risk factor 7 “Relationship with victim” in reliance upon the Board’s position statement. In the alternative, in the event the court were to allocate a sufficient number of points to the defendant’s total risk factor score to establish that he is a presumptive risk level two sex offender, the defense seeks a downward departure therefrom to a risk level one designation based upon the defendant’s age, physical infirmity, and prior military service, and the character of the defendant *803 evinced through the letters of support which were written by several individuals on behalf of the defendant and submitted to the court prior to the imposition of sentence in this case.
Conclusions of Law
Pursuant to article 6-C of the Correction Law, this court is required to determine the duration of the defendant’s registration obligations upon application of the guidelines set forth in Correction Law § 168-Z (5), and to determine the defendant’s level of notification upon consideration of the factors set forth in Correction Law § 168-Z (6). In this regard, the Board has developed the RAI to serve as a computational table which is designed to enable the courts to make the required calculations for the purpose of determining the appropriate level of notification and duration of registration applicable to a defendant who is convicted of a “sex offense” within the meaning of Correction Law § 168-a (2) or (3). The RAI allocates a point total to each of the statutory recidivism risk factors listed in Correction Law § 168-Z (5) and adds the total number of points allocated to a particular sex offender to reach a total risk factor score, which provides for one of three distinct levels of notification and registration requirements, identified as risk level one, risk level two or risk level three.
Pursuant to a risk level one and a risk level two designation, the local police receive information from the Board of Examiners of Sex Offenders about a sex offender residing in their jurisdiction and may provide community notification concerning the sex offender (Correction Law § 168-Z [6] [a]), including the name, photograph and description of the offender, background information of the offender’s SORA crime, and the name and location of any institution of higher learning attended by the offender. A risk level one sex offender is also required to register annually for a period of 20 years with the Division of Criminal Justice Services (hereinafter, DCJS) by filing a written form (Correction Law §§ 168-f, 168-h) and must advise DCJS of any change of address in writing at least 10 days prior to such change (Correction Law § 168-f [4]). Similarly, a risk level two sex offender is required to register annually for life with the Division of Criminal Justice Services by filing a written form (Correction Law §§ 168-f, 168-h) and must advise DCJS of any change of address in writing at least 10 days prior to such change (Correction Law § 168-f [4]). In addition, with respect to an offender who is assigned a risk level two designation, the lo *804 cal police may notify “entities with vulnerable populations” of a risk level two sex offender’s identity, including photograph and approximate address, as well as background information about the crime including the manner of commission and type of victim, and any special conditions imposed by the sentencing court, probation department, or parole board, which may also be disseminated through the “900” telephone hot line (Correction Law § 168-p [1]). Such information is also available to the public through the Internet at New York State Division of Criminal Justice Services, Sex Offender Management, http:// www.criminaljustice.ny.gov/nsor/index.htm.
Pursuant to a risk level three designation, a sex offender is required to register annually with DCJS for life by filing a written form (Correction Law §§ 168-f, 168-h) and any change in address must be reported to DCJS in writing 10 days prior to such change (Correction Law § 168-f [4]). Furthermore, the risk level three sex offender must personally verify his or her address every 90 calendar days with the local law enforcement agency having jurisdiction in the area of his or her residence (Correction Law § 168-f). The local law enforcement agency may also disseminate all of the information available for the risk level three sex offender, in addition to the exact street address. Furthermore, DCJS is required to distribute a subdirectory of all risk level three sex offenders to local law enforcement agencies, where it is to be made available for public inspection through the Internet at New York State Division of Criminal Justice Services, Sex Offender Management, http:// www.criminaljustice.ny.gov/nsor/index.htm (Correction Law § 168-q).
Upon determining the duration of the defendant’s registration obligations upon application of the guidelines set forth in Correction Law § 168-/ (5), the court must also determine whether a sex offender shall be designated a sexual predator, a sexually violent offender, or a predicate sex offender as defined in Correction Law § 168-a (7). Significantly, such a designation imposes a duty upon the sex offender to register annually for life with DCJS, irrespective of his or her designation as either a risk level one, risk level two or risk level three sex offender.
Upon considering the recommendations of the People, as evinced through the RAI they prepared in connection with the instant proceeding, this court has considered the Risk Assessment Guidelines and Commentary (hereinafter, the Guidelines) prepared by the Board in connection with the calculation of the *805 defendant’s total risk factor score and presumptive risk assessment level. In connection with the calculation of a sex offender’s total risk factor score, the court is mindful that “[p]oints should not he assessed for a factor . . . unless there is clear and convincing evidence of the existence of that factor” (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 5 [2006]; see also People v Salaam, 174 Misc 2d 726 [1997]).
Turning first to consider the People’s application seeking the allocation of 30 points to the defendant’s total risk factor score pursuant to RAI risk factor 5 “Age of victim,” the court notes that the defense did not object to the allocation of same to the defendant’s total risk factor score. The Board’s application of risk factor points for sex offenders who target young children is premised upon the results of studies which have concluded that “[offenders who target young children as their victims are more likely to reoffend” (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 11 [2006], citing Abel, Osborne & Twiggs, Sexual Assault through the Lifespan: Adult Offenders with Juvenile Histories, Barbaree, Marshall & Hudson, The Juvenile Sex Offender [1993]; Weinrott & Saylor, Self-Report of Crimes Committed by Sex Offenders, 6 J Interpersonal Violence [No. 3] 287, 291-292 [Sept. 1991]). Therefore, noting the uncontroverted evidence adduced through People’s exhibit 5 during this proceeding concerning the defendant’s possession of more than 50 image files at the time of his arrest in this case depicting children 10 years of age or less engaged in sexual performances, the court finds that such conduct by the defendant merits the imposition of the 30 points available under RAI risk factor 5 toward the defendant’s total risk factor score. Accordingly, the People’s application seeking the allocation of 30 points under RAI risk factor 5 toward the defendant’s total risk factor score is granted without objection by the defense.
Upon turning to consider the People’s application seeking the allocation of 15 points to the defendant’s total risk factor score pursuant to RAI risk factor 14 “Supervision,” the court notes that the defense did not object to the allocation of same to the defendant’s total risk factor score. Therefore, noting the uncontroverted evidence adduced through People’s exhibit 2 during this proceeding concerning the defendant’s release from incarceration upon the completion of his sentence without any form of supervision, either court-mandated or voluntary, the *806 court finds that this circumstance merits the imposition of the 15 points available under RAI risk factor 14 toward the defendant’s total risk factor score (see People v Lewis, 37 AD3d 689 [2007]; see also People v Diaz, 61 AD3d 465 [2009]). Accordingly, the People’s application seeking the allocation of 15 points under RAI risk factor 14 toward the defendant’s total risk factor score is granted without objection by the defense.
Turning next to concurrently consider the People’s application seeking the allocation of 30 points to the defendant’s total risk factor score under RAI risk factor 3 “Number of victims,” and the allocation of 20 points to the defendant’s total risk factor score under RAI risk factor 7 “Relationship with victim,” the People argue that the court should allocate a total of 50 points thereunder toward the defendant’s total risk factor score upon a finding that the defendant victimized each of the minors, exceeding 50 individual children, whose images were depicted in the computer files he possessed when he was arrested in this case. In support of this application, the People rely upon People’s exhibit 3 which relates the fact that the defendant was charged under the instant indictment for possessing more than 50 files depicting images of children engaged in sexual activity, as well as People’s exhibit 5 which confirms the nature of these images through the reported results of the forensic examination of the defendant’s computer and its associated storage devices by a criminal investigator for the Westchester County District Attorney’s Office.
In further support of their position, the People cite to the holding of the Appellate Division, Fourth Department in People v Poole (90 AD3d 1550 [2011]), which stands for the proposition that a defendant who is convicted of a sex offense involving the possession of child pornography must be assessed the applicable number of points under RAI risk factors 3 and 7 where the pornographic images he or she possessed depicted three or more children who were not known to the defendant, based upon the well-settled premise that children depicted in pornographic images constitute “victims” for the purpose of calculating a sex offender’s total risk factor score under SORA (see People v Johnson, 11 NY3d 416 [2008]; see also People v Bretan, 84 AD3d 906, 907 [2011]; People v Perahia, 57 AD3d 865 [2008]).
In opposition to the People’s recommendation, the defense argues that no points should be allocated to the defendant’s total risk factor score under either risk factor 3 or risk factor 7 and cites to the position statement issued by the Board in 2012, *807 submitting that the court should be guided by the rationale underlying the Board’s pronouncements set forth therein. In substance, the position statement recognizes that precedent case law requires that points be allocated toward a child pornography offender’s total risk factor score under risk factors 3 and 7, based upon the number of victims and the nature of the offender’s relationship with those victims, respectively, but asserts that this may produce an anomalous result to the extent that the majority of such offenders will be scored the same under these risk factors despite the potential differences between them. The Board continues, through the position statement, to explicitly state that it “[w]ill continue to score either 20 or 30 points for the youngest age depicted in the images under the ‘Current Offense’ category, and will depart from the presumptive level when appropriate,” yet the Board makes no specific representation concerning its risk factor scoring approach with regard to either risk factor 3 or risk factor 7.
Upon this court’s scrutinizing examination of the position statement, it is readily apparent that it does not support the defendant’s argument that the rationale set forth therein by the Board serves to preclude the allocation of points to a defendant’s total risk factor score under either risk factor 3 or risk factor 7, as either a matter of law or a matter of discretion (cf. People v Antoine, 37 Misc 3d 474 [2012]). Simply stated, the defendant’s argument concerning risk factors 3 and 7 is unsupported by the Board’s position statement and is patently inconsistent with the holding of the Court of Appeals in People v Johnson (11 NY3d 416 [2008]), which specifically held that a defendant who has been charged with the possession of images of child pornography depicting several (more than three) distinct children who are unknown to him or her will be deemed to have victimized more than three child victims who were strangers within the meaning of RAI risk factors 3 and 7 (People v Bretan, 84 AD3d 906 [2011]; People v Blackman, 78 AD3d 803 [2010]; People v Yen, 33 Misc 3d 1234[A], 2011 NY Slip Op 52240[U] [2011]). Accordingly, based upon the unambiguous guidance provided by the precedent case law cited herein which defines the scope of RAI risk factors 3 and 7, and the inapplicability of the Board’s position statement to the scoring methodology pertaining to these risk factor categories, the People’s application seeking the allocation of 30 points to the defendant’s total risk factor score under RAI risk factor 3 “Number of victims,” as well as the allocation of 20 points to the defendant’s total *808 risk factor score under RAI risk factor 7 “Relationship with victim” is granted.
Upon consideration of the foregoing, the court finds that after allocating the applicable point total to each of the statutory recidivism risk factors set forth in the RAI, a total of 95 points is appropriately allocated to the defendant’s total risk factor score, which provides for a presumptive finding that the defendant should be classified as a risk level two sex offender. As the defendant’s total risk factor score results in a presumptive finding that he is a risk level two sex offender, and noting that the People have not moved the court for an upward departure from that presumptive risk level, the court will next consider the defense application seeking a downward departure from the presumptive risk level two designation to a risk level one designation.
Although the presumptive risk level provides a rebuttable presumption, the calculation reached by the courts upon utilization of the RAI will generally “result in the proper classification in most cases so that departures will be the exception — not the rule” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]; see People v Williams, 19 AD3d 388 [2005], lv denied 5 NY3d 713 [2005]; see also People v Guaman, 8 AD3d 545 [2004]). Upon consideration of an application seeking a departure from a presumptive risk assessment level, the courts are specifically authorized to depart upwardly or downwardly from same when “there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]; see People v White, 25 AD3d 677 [2006], lv denied 6 NY3d 715 [2006]; People v Henry, 91 AD3d 927 [2012]). In this regard, the courts have the discretion to grant the application of a sex offender seeking a downward departure from his or her presumptive risk level when he or she makes a twofold showing, first identifying “as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines” (People v Wyatt, 89 AD3d 112, 128 [2011]; see People v Benjamin, 105 AD3d 926 [2013]; People v Washington, 105 AD3d 724 [2013]; People v Madison, 98 AD3d 573, 574 [2012]), and second proving by a preponderance of the evidence that the facts alleged to constitute a mitigating factor *809 are sufficient to warrant a departure from the presumptive risk level (see People v Wyatt, 89 AD3d at 127-128; see also People v October, 101 AD3d 975, 976 [2012]; People v Watson, 95 AD3d 978, 979 [2012]).
Here, the defense supports their application for a downward departure from the presumptive risk level two designation to a risk level one designation through their claim that the defendant presents a lower likelihood to re-offend due to the fact that he is 75 years of age, suffers deafness in one ear, served in the United States Armed Forces and received the support of numerous friends and associates who wrote letters on his behalf to the sentencing court. However, notably absent from the proffer by the defense is any indication that the defendant has expressed any sincere feelings of remorse, any insight or understanding of the harm inflicted upon innocent children by criminal conduct such as that underlying the instant conviction, any degree of empathy for abused children in general, any participation in sex offender treatment programming while incarcerated or any intention to voluntarily pursue such treatment following his release from incarceration, nor any evaluative analyses of mental health professionals indicating the level of risk of re-offense and danger to the community posed by the defendant. In substance, the defense seems to expect this court to presume that the defendant will refrain from engaging in the reprehensible criminal conduct which resulted in the underlying conviction and will present no danger to the children of our shared community simply because he is a somewhat elderly veteran who suffers from a hearing deficit, choosing to overlook the incongruous fact that the defendant presented with these very same attributes two years ago when he committed his repugnant crime of conviction.
Furthermore, to the extent that the defense suggests that the dicta provided by the Court of Appeals in People v Johnson (11 NY3d 416 [2008]) provides that all defendants who are scored as presumptive risk level two sex offenders under SORA following their conviction of crimes which consisted of their possession of pornographic images of children will uniformly and properly be granted downward departures to risk level one designations, there is absolutely no support for such a reading of the holding or dicta enunciated therein. Rather, insofar as relevant to this branch of the defendant’s argument, the Johnson case simply stands for the proposition that a defendant who has been convicted of a crime involving the possession of child *810 pornography may seek a downward departure from his or her presumptive risk level, while noting that the application of points under risk factor 7 to such a defendant “produces a seemingly anomalous result, one the authors of the Guidelines may not have intended or foreseen” (People v Johnson, 11 NY3d at 421). Contrary to the defendant’s contention, the Johnson Court’s holding does not stand for the proposition that a SORA defendant’s application for a downward departure from a presumptive risk level two designation must be granted in all child pornography possession cases irrespective of the showing proffered by the particular defendant at his or her SORA hearing. Rather, it appears that the more well-reasoned approach adopted by SORA hearing courts which have applied the “preponderance of the evidence” standard enunciated in People v Wyatt (89 AD3d at 127-128) when granting a SORA defendant’s application for a downward departure from the presumptive risk level designation in a child pornography possession case is to have relied upon a specific mitigating factor, such as the sex offender’s participation in and response to sex offender treatment programming, before granting an application for a downward departure (People v Antoine, 37 Misc 3d 474 [2012]; People v Yen, 33 Misc 3d 1234[A], 2011 NY Slip Op 52240[U] [2011]).
Accordingly, upon due consideration of the defense claim that the defendant presents a lower likelihood to re-offend due to his advanced age, hearing impairment and status as a veteran of the United States Armed Forces, this court concludes that the defendant has failed to meet his burden to establish by a preponderance of the evidence that any of the mitigating factors he cited establish a lower likelihood of re-offense or danger to the community sufficient to warrant a downward departure from his presumptive risk level. As a result of the defendant’s failure to meet his burden of proof with regard to the requisite twofold showing established in People v Wyatt (89 AD3d at 121), this court lacks discretion to downwardly depart from the presumptive risk level (People v Henry, 106 AD3d 796 [2013]; People v Washington, 105 AD3d 724 [2013]; People v Shephard, 101 AD3d 978, 979 [2012]; People v Martin, 90 AD3d 728 [2011]). Based upon the foregoing, the defendant’s request for a downward departure from his presumptive risk level two designation is denied.
With respect to the court’s additional obligation to determine whether the defendant shall be designated a sexually violent of *811 fender, predicate sex offender or sexual predator within the meaning of Correction Law § 168-a (7), the People and the defense have properly stipulated and agreed that the defendant’s plea of guilty to the crime of possessing an obscene sexual performance by a child does not satisfy the criteria necessary to require that the defendant be designated as such for the purpose of determining his applicable level of notification.
Accordingly, as the record of this proceeding establishes that the defendant’s total risk factor score requires a presumptive finding that he is appropriately designated a risk level two sex offender and that there has been no showing sufficient to provide this court with discretion to downwardly depart from the defendant’s presumptive risk level two designation, the defendant is hereby classified to be a risk level two sex offender and is directed to timely comply with the registration provisions which are implicated by this decision and order, as set forth in article 6-C of the Correction Law.