People v Reyes (2024 NY Slip Op 51641(U))

[*1]

People v Reyes

2024 NY Slip Op 51641(U)

Decided on December 6, 2024

Supreme Court, Richmond County

Rajeswari, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 6, 2024
Supreme Court, Richmond County

The People of the State of New York

against
Modesto Reyes, Defendant.

SCI No. 90007/2016

For the Defendant: Allen P. Cappelli, Esq. 
148 Kissel Avenue
Staten Island, NY 10310
For the People: Michael E. McMahon 
District Attorney, Richmond County 
130 Stuyvesant Place
Staten Island, NY 10301 
By: ADA Amir Fadl, Esq.
ADA Dana Gambardella, Esq.

Raja Rajeswari, J.

Pursuant Article 6—c of the New York State Correction Law, the Sex Offender Registration Act ("SORA"), by the Order and Decision of this Court, dated March 28, 2016, the defendant was designated a level two sexually violent offender. On November 3, 2023, pursuant to Correction Law § 168-o, the defendant filed a petition seeking an order terminating the defendant's current SORA requirements or, in the alternative, a downward modification of his risk level to level one.
Upon submission of the instant application, this Court considered the petition and affirmation of counsel for the defendant, the updated recommendation report of the Board of Examiners of Sex Offenders ("the Board"), the affirmation in opposition filed by the People, the exhibits entered into evidence at the hearing, including the written evaluation submitted by Cassandra Lauletti, LMSW, and the testimony of the defendant and two witnesses, and the written arguments of defense counsel and the People, the Court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
The defendant pled guilty, via Superior Court Information, to Attempted Course of Sexual Conduct Against a Child, Penal Law §§ 110/130.80(1)(b), on January 26, 2016. The accusatory instrument alleged that the defendant, between June 1, 2012 and October 1, 2015, subjected the complainant to a continuing course of sexual misconduct. The sexual misconduct began when the complainant, the daughter of his intimate partner, was ten (10) years old. As alleged, from January 2015 through October 1, 2015, the defendant rubbed his penis against the complainant's anus and vagina and attempted to penetrate her anus and vagina with his penis approximately once a week. From June 1, 2012 to October 1, 2015, the defendant is further alleged to have touched, grabbed and rubbed the complainant's vagina, buttocks and breasts, and further had the informant touch his penis once every month during this time frame. On one specific occasion, on or about October 1, 2015, the defendant attempted to insert his penis into the complainant's vagina while the complainant resisted and inserted his penis into her anus. 
The instant offense marked the defendant's fifth conviction. Previously, on May 25, 1999, the defendant pled guilty to Driving While Ability Impaired (Vehicle and Traffic Law § 1192[1]) and was sentenced on the same date to a conditional discharge, an alcohol abuse program, $500 fine and a ninety-day license suspension. Nearly two years later, the defendant was convicted of Driving While Intoxicated (Vehicle and Traffic Law § 1192[3]) by his plea of guilty on May 11, 2001, and was sentenced to a conditional discharge, an alcohol abuse program, $500 fine and a six-months license suspension. On May 6, 2005, the defendant again pled guilty to Driving While Ability Impaired (Vehicle and Traffic Law § 1192[1]) and was sentenced to a conditional discharge, an alcohol abuse program, five-days incarceration and a license revocation. Lastly, the defendant pled guilty to Aggravated Driving While Intoxicated (Vehicle and Traffic Law § 1192[2-a]), a felony, and was sentenced to a sentence of twenty-days incarceration, five years' probation, and a license revocation.
The Board's initial recommendation noted that the Pre-Sentence Investigation (PSI) Report indicated that the defendant minimized his offense by stating that he pled guilty upon the advice of his attorney, that the complainant had alleged that he "touched" her with without any elaboration on what he meant by "touched," and denied touching her. 
On March 28, 2016, after a hearing was held, the Court assessed the defendant 90 points, and the defendant was designated by this Court to be a level two sexually violent offender within the meaning of Correction Law § 168—d upon the application of the guidelines set forth in subdivision five of Correction Law § 168—l.
On November 3, 2023, the defendant filed and served the instant petition. The petition did not attach any exhibits, such as letters of support, certificates of program completion or other supporting materials, however, it did include citations to case law for consideration. In support of his modification, the defendant cites to, among other things, living a law-abiding life in the years since the instant conviction, early termination from probation, participation in a sexual offender treatment program provided by Four Bridges Social Work Services, his involvement in a committed relationship with his wife with whom he has been living with for sixteen years and has three children, his age and stable employment. The defendant further states that prior to the instant offense, he led an exemplary life without prior contact with the criminal justice system; however, such claim is contradicted by a cursory review of his criminal history. On March 27, 2024, the People served and filed an affirmation in opposition to the defendant's application. The defendant further supplemented his petition via by an evaluation submitted by Cassandra [*2]Lauletti, LMSW, of Four Bridges Social Work Services, dated April 6, 2024, which this Court addresses below. 
Upon receipt of the defendant's instant petition, the Board issued an updated recommendation by letter dated January 18, 2024, pursuant to Correction Law § 168—o(4), which found that the defendant had failed to present clear and convincing evidence warranting a downward modification. While the Board commended the defendant for his early termination from probation and recognized that he has been compliant with his SORA requirements, the Board pointed to the defendant's lack of supporting documentation, such as a report from his treatment provider or letters of support from his wife or others in the community. The Board further also discredited the defendant's claim that the instant offense represents his only criminal contact due to his prior felony, misdemeanor and traffic infraction convictions. Relatedly, the defendant failed to address his prior criminal activity involving alcohol and failed to detail any details regarding the management of such issue. The defendant further failed to provide a personal affidavit, acknowledging his sexual offense, the benefits of treatment, his insight into and understanding of his sexual offense and plans to reduce the likelihood of re-offense without supervision. 
The Court further held a hearing on the defendant's petition commencing on June 10, 2024 and concluding on October 11, 2024.[FN1]
 In support of his petition, the defendant entered into evidence the report submitted Ms. Lauletti, the pre-sentence investigation report dated March 24, 2016 from the Department of Probation, and the September 18, 2023 transcript of the court appearance where the defendant's request for early termination from probation was granted without opposition.
On October 11, 2024, the defendant offered the testimony of two witnesses in support of his application. First, Justino Enrequez testified that he has known the defendant for thirty years and described the defendant generally as a good person. Mr. Enrequez further testified that, in addition to working with him, he has socialized with the defendant, the defendant's family and his own family, and no one, including Mr. Enrequez ever expressed concerns about the defendant. He further testified that he has observed the defendant drink, but not excessively, although he would drink to the point of becoming dizzy. 
On cross-examination, Mr. Enrequez stated that he did not know that the defendant was a registered sex-offender, and he was seeking to modify his registration. Mr. Enrequez further explained that he did not know any details of the defendant's sexual offense, nor did he believe that others knew of the sexual offense. Additionally, while he knew the defendant had been arrested for Driving While Intoxicated, he believed he was arrested only once for such crime. 
Ms. Wendy Ramerez also testified in support of the defendant's application. Ms. Ramerez's family has known the defendant for thirty years, and she has personally known him for fifteen years. Ms. Ramerez explained that the jewelry store owned and operated by her family is a "town hall" of sorts where, among other things, people come to gain immigration advice. She explained that the customers at the defendant's restaurant, located near to her family's store, speak positively of the defendant. Ms. Ramerez further indicated that she has not [*3]heard anyone speak negatively of the defendant or his behavior, including her own daughter, whom she would allow to socialize with the defendant. Ms. Ramerez further indicated that the counseling undertaken by the defendant has allowed him to grow. 
On cross-examination, Ms. Ramerez admitted that she did not know about the defendant's several convictions related to drunk driving. Upon being questioned regarding her knowledge of the details of the defendant's conviction in the instant matter, Ms. Ramerez further admitted that she did not know the defendant's personal life well, but only from his appearance in the community.
Lastly, the defendant testified on his own behalf. During his testimony, the Court observed that the defendant faced away from the audience and the attorneys asking him questions. The defendant stated that he is married and has three children, one of whom, his daughter, still lives with him. The defendant testified that as result of his conviction, he attended counseling where he learned to respect more people, specifically women, and he would never commit such an offense again because he wants to live in peace. The defendant further stated that he understands the pain he caused his family, wishes to repent for it and asks for forgiveness. 
On cross-examination, when asked directly whether he ever told his social worker that the only reason he was convicted in the instant matter was due to poor advice from his lawyer, the defendant claimed he did not remember. The defendant further stated he ceased attending counseling when his probation supervision was terminated. When asked whether he had been sexually abusing the child for which he was convicted for three years, the defendant responded, "Maybe."
As mentioned above, in support of his application, the defendant submitted an evaluation, dated April 6, 2024, by Cassandra Lauletti, LMSW, of Four Bridges Social Work Services, where the defendant was mandated to attend following his conviction. The evaluation was also entered into evidence at the hearing, as Exhibit A. The report indicates that the defendant had previously received services from a provider no longer in practice and began working with Ms. Lauletti on September 16, 2020. The defendant then received treatment from Ms. Lauletti until September 13, 2023 when the defendant requested to be discharged from the program upon his probation being terminated. The report states that the defendant did not find his initial treatment successful or beneficial. Ms. Lauletti's report further indicates that the defendant was dealing with symptoms of adjustment disorder due to his conviction, sentencing and sex offender status. The report further states,
He has frustration and unhappiness towards his lawyer and puts blame on him as to why Mr. Reyes has a guilty conviction and is now on probation. He questions if he would have plead guilty if he knew that he would have to check in with a probation officer, go to therapy, and register as a sex offender. His upset feelings became exacerbated once he realized what requirements came with his probation and the impact of being registered as a sex offender, leading to the underlying root of his treatment.
Mr. Reyes reports he used to hold feelings of anger regarding these accusations and his probation, which has lessened to frustration and moved towards acceptance over time with therapeutic support . . . [O]ver the course of treatment he came to understand the importance of being able to take responsibility for his own actions and teaching this to his children and grandchildren.
The report further indicates that the defendant presented a lack of engagement in therapy, appearing nonchalant towards therapy and the need to attend weekly, and missed several sessions, failing to cancel such sessions in accordance with the program's policy. The defendant at one point even requested that the sessions change from weekly to every two weeks, which was denied. The report further states, " . . . Mr. Reyes initially did not take culpability or responsibility for his actions in regard to the sexual abuse allegations that he pled guilty to, being unwilling to accept his guilty plea and what that decision meant for his life and the life of the individual who was the victim in this case." The report further indicates that the defendant was slow to meaningfully participate in treatment due to his belief in his innocence of the charges brought against him. Once the defendant was able to accept responsibility for his actions, however, he was able to express why nonconsensual sexual contact is wrong. The defendant further expressed no desire towards sexual contact with minors or forcing nonconsensual acts on others. 
Ms. Lauletti concludes that the defendant made "tremendous progress" over the course of his treatment, which she attributes to "gaining consistency in his attendance, active engagement in verbal expression of this [sic] thoughts and feelings, and his ability to learn from his past issues and mistakes and forge a better future for himself and those around him." Ms. Lauletti further expressly supported a downward modification of the defendant's sex offender status.
The People oppose the defendant's application, arguing that the defendant's history prior to his conviction here supports maintaining him a level two Sex Offender. The People highlight that following the defendant's first felony conviction in 2008, he was placed on probation for a period of five years, however, such supervision did not prevent the defendant from sexually abusing the complainant beginning in 2012, demonstrating a risk of recidivism. The People further argue that the defendant has not engaged in any sex offender treatment or therapy since his termination from probation on the instant matter. Accordingly, the defendant's history and failure to complete any additional treatment demonstrate that he poses a risk of recidivism. The People further cast doubt on the validity of the defendant's claim that his marital and familial status support his application for a downward modification since no family members either testified on his behalf or provided letters or affidavits in support of his application. The People further highlight that the defendant's current relationship existed at the time of the defendant's offense and did not prevent the instant offense. Additionally, the People also posit that because the defendant has been without probation supervision for only one year, there has not been sufficient time to evaluate his behavior in the community without additional monitoring.

CONCLUSIONS OF LAW
Pursuant to Correction Law § 168—o(2), a sex offender is permitted to petition annually for modification of his or her risk level classification. See also People v Lashway, 25 NY3d 478, 483 2015; People v Springs, 162 AD3d 917, 918 (2d Dept 2015). "Upon receipt of a petition [for a downward modification], the court shall forward a copy of the petition to the [B]oard and request an updated recommendation pertaining to the sex offender and shall provide a copy of the petition to the other party." Correction Law § 168—o(4). Once the Court makes such a request, "the [B]oard shall provide an updated report pertaining to the sex offender petitioning for relief of the duty to register or for a modification of his or her level of notification." Correction Law § 168—l(7). The Court shall then forward the Board's report to the parties. Correction Law § 168—o(4). "After reviewing the recommendation received from the board and [*4]any relevant materials and evidence submitted by the sex offender and the district attorney, the court may grant or deny the petition." Id. 
The Court then shall render a decision setting forth its findings of fact and conclusions of law. Id. Its determination will not be disturbed absent an abuse of discretion. Davis, 179 AD3d at 192. As our Appellate Division has noted, "SORA and its Guidelines recognize that sex offenders can improve themselves to the point that they no longer pose a high or even moderate threat of reoffending. Further, our application of SORA and its Guidelines holds the promise of the recognition of rehabilitation so as to incentivize a sex offender to achieve that which this defendant has achieved." Id. To this end, the court shall also employ an "individualized approach . . . to properly and fairly evaluate applications . . . seeking modifications in the classification of a sex offender's designated risk level." Id. at 187-188.
In contrast to a sex offender seeking a downward departure at an initial risk level determination proceeding, who bears a burden of proof by a preponderance of the evidence (People v Gillotti, 23 NY3d 841, 860—861 [2014]; People v Wyatt, 89 AD3d 112, 127-128 [2d Dept 2011]), a sex offender petitioning for a downward modification "bear[s] the burden of proving the facts supporting the requested modification by clear and convincing evidence." Correction Law 168—o(2); see also Lashway, 25 NY3d at 483; Wyatt, 89 AD3d at 125. The defendant's petition for modification is not an opportunity to review or rescore the defendant's initial designation. See People v Davis, 179 AD3d 183, 187 (2d Dept 2019. "'Rather, the relevant inquiry is whether conditions have changed subsequent to the initial risk level determination warranting a modification thereof.'" Id. (quoting People v Anthony, 171 AD3d 1412, 1413 [3d Dept 2019]).
Through the defendant's petition, accompanying documentary material submitted, as well as the testimony and exhibits at the SORA hearing, clear and convincing evidence was presented that defendant pled guilty to a single count of Attempted Course of Sexual Conduct Against a Child for engaging in multiple sexual acts with a minor on various date between June 1, 2012 and October 1, 2015, beginning when she was ten (10) years old. At the time of the sexual offenses, the defendant was between the ages of forty-nine (49) years old and fifty-two (52) years old and had two prior traffic infraction convictions, one misdemeanor conviction and one felony conviction, all of which were related to driving while intoxicated or impaired by alcohol, for which the defendant had received various sentences, including a term of probation which coincided with the defendant's sexual offense. The defendant's sentence for the underlying Attempted Course of Sexual Conduct Against a Child conviction was ten years' probation, which was terminated early, and, at sentencing, the defendant was adjudicated a level two sexually violent offender. During his time under supervision with the Department of Probation, the defendant was required to engage in counseling. The defendant participated in two programs during such time; the defendant did not provide any information regarding the first program, but for approximately three years, he received treatment through Four Bridges Social Work Services. 
In support of his petition for a downward modification, the defendant alleges, among other things, that the defendant has lived a law-abiding life for approximately seven and a half years including the past year without community supervision, complied with all conditions of probation leading to early termination of his probation sentence, accepted full responsibility for his acts, engaged in sex offender treatment, maintained a relationship with his wife for over sixteen years, is now sixty years old, and has remained gainfully employed. 
Applying the governing legal principles here to the submissions from both parties and the Board, as well as the records put forth at the hearing, this Court finds that the defendant has failed to establish, by clear and convincing evidence, facts warranting a downward modification of his existing risk level classification to a risk level one. While the Court credits the defendant's early release from probation and participation in a mental health program, upon review of the relevant materials in their totality, this Court agrees with the Board's recommendation and finds that the defendant has failed to demonstrate that conditions have changed after his initial risk level determination warranting a downward modification, and thus this Court exercises its discretion to deny the petition. See Correction Law § 168-o(4); Lashaway, 25 NY3d at 483. 
Although the Court acknowledges that since his designation as a risk level two offender, the defendant underwent counseling and engaged in some form of treatment, there is insufficient evidence demonstrating that his participation in such treatment was meaningful. The record is devoid of any details regarding the defendant's participation in the first mental health program, which lasted for approximately over four years. The few details that have been provided, however, indicate that it was not beneficial or successful. The report from Ms. Lauletti further fails to assure this Court that his participation in the Four Bridges program meaningfully addressed the risk of recidivism. There is no indication that Ms. Lauletti specialized in any kind of sex offender treatment, and much of the report remarks upon the defendant's progression from denial of his offense and resistance to treatment to one of gradual acceptance of his conviction and sex offender status. While Ms. Lauletti's report indicates that the defendant made strides in managing his own feelings towards the effects of his conviction and sex offender status, it fails, however, to provide any evidence that the risk of reoffending has been reduced, omitting, for example, identified risk factors or safety planning. Unfortunately, these therapy sessions ended in 2023 upon the termination of the defendant's term of probation, which appears to have occurred at an importune time given the defendant appeared to just then come to a point where the underlying cause of the offense could have been addressed and the knowledge and skills to manage his risk of recidivism could have been learned. Such lost opportunity was reflected in the defendant's testimony at the hearing, where on both direct and cross examinations, he failed to provide any meaningful details about his therapy, offense, or treatment. While the report provided some details regarding specific disorder symptoms and conclusions about improved decision-making skills, there has been no evidence on how the defendant intends to address the risk of reoffending without the benefit of community supervision or treatment in the future.
Critically, the defendant presented evidence that he terminated his treatment once he was no longer mandated to do so by the Department of Probation and provided no evidence that he continued a sex offender treatment program, thereby casting doubt as to whether his individualized treatment goals were achieved. The defendant's ability to demonstrate that he could manage the factors that led to his first offense would have been an important aspect of recovery, yet defendant elected not to continue with sex offender specific treatment when his probation supervision ended on September 13, 2023. The report from Four Bridges confirms as much, reflecting that the defendant was initially resistant to any treatment whatsoever and that the defendant declined to continue his participation in either mental health or sexual offender treatment after his mandate had expired. 
Moreover, while Ms. Lauletti appeared aware of the defendant's prior criminal history in reaching her professional conclusions, there is no mention of treatment or referrals for the defendant's issues with alcohol or discussion of any investigation of the role alcohol [*5]consumption may have played in the defendant's sexual offense. Rather, Ms. Lauletti's conclusions rely on the defendant's own self-reported alcohol usage, which itself was called into question by the hearing testimony. Therefore, the Court finds that the defendant fails to meet his burden as to whether his participation in treatment meaningfully reduced his risk of reoffending. See People v Colon, 185 AD3d 612, 613 (2d Dept 2020) (downward modification petition was properly denied where he presented no evidence concerning his participation in sex offender counseling or treatment that would demonstrate a lowered risk of re-offense).
The additional factors laid out by the defendant further fail to demonstrate that his risk of reoffending has been reduced. Defendant's present age, 61 years old, and employment are not reliable factors in determining his risk of reoffending since he committed the underlying offense between the ages of 49 and 52 years old, already a mature adult and, at that time, employed. Additionally, while the defendant points to his family as a basis of support and a reason to not reoffend, he has not provided letters of support or testimony from his wife or children. While the defendant presented two witnesses to testify in support of his petition, the witnesses either knew nothing or very few details concerning his offense and what specifically the defendant has done since conviction to address it. Furthermore, the defendant's marriage with his wife is not a mitigating factor since he was in a relationship his wife, who is also the mother of the complainant in the underlying offense, when he committed the underlying offense. See People v McFarland, 120 AD3d 1121, 1122 (1st Dept 2014). 
To add, although the defendant has not reoffended since his release from supervision on the underlying sex offense and is now 61 years old, these factors are outweighed by the extreme seriousness and nature of the underlying sex offense and the defendant's failure to demonstrate meaningful participation in a sex offender treatment program. Because the defendant has failed to provide clear and convincing evidence of a lower risk of re-offense, his application is denied. See People v Hegazy, 170 AD3d 899, 900 (2d Dept 2019) (although the defendant did not reoffend since her release on the underlying sex offense and is in her 60s, those factors are outweighed by the extreme seriousness and nature of the underlying sex offense and that she failed to meaningfully participate in sex offender treatment).

CONCLUSION
In sum, upon examining the submissions in their totality, the Court holds that defendant did not submit clear and convincing evidence that conditions have changed since his conviction to warrant a downward modification of his risk level. See People v Clark, 207 AD3d 758, 759 (2d Dept 2022); Colon, 185 AD3d at 613; People v DeSoto, 181 AD3d 835, 836 (2d Dept 2020); People v Wiggins, 180 AD3d 820, 821 (2d Dept 2020); Hegazy, 170 AD3d at 900. Therefore, based upon the foregoing findings of fact and conclusions of law, the defendant's petition seeking the modification of the defendant's designated risk level from a level two to a level one, pursuant to Correction Law § 168-o(2), is denied.
The foregoing constitutes the order and decision of the court.
Dated: December 6, 2024
Staten Island, New York
E N T E R:
RAJA RAJESWARI, A.J.S.C.

Footnotes

Footnote 1: The Court notes that the hearing was adjourned on multiple dates due to health issues of defense counsel, during which time another attorney appeared on the matter, and the availability of witnesses and appropriate interpreters.