People v Moore (2025 NY Slip Op 50732(U))

[*1]

People v Moore

2025 NY Slip Op 50732(U)

Decided on May 1, 2025

Criminal Court Of The City Of New York, Richmond County

Rajeswari, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 1, 2025
Criminal Court of the City of New York, Richmond County

The People of the State of New York

against
Robert Moore, Defendant.

Docket No. 2017RI004529

For the Defendant: Appellate Advocates 
111 John Street, 9th Floor
New York, NY 10058
By: Zachory Nowosadzki, Esq.
For the People: Michael E. McMahon 
District Attorney, Richmond County 
130 Stuyvesant Place
Staten Island, NY 10301 
By: Brianna Joerger, Esq.

Raja Rajeswari, J.

The defendant stands convicted of Forcible Touching (Penal Law § 130.52[1]) and Sexual Abuse in the Third Degree (Penal Law § 130.55). The defendant was then sentenced to one year of incarceration with an order of protection. The defendant was further advised that, pursuant to Correction Law § 168-a(2)(a)(i) and because of his prior criminal history, a conviction of Penal Law §§ 130.52 and 130.55 in the instant matter requires an assessment of the defendant under the Sexual Offender Registration Act (Correction Law § 168 et seq.) ("SORA"). On April 7, 2025, pursuant to Correction Law § 168-n, the Court conducted a hearing to determine the defendant's appropriate designation level.
In making the following findings of fact and conclusions of law, the Court has considered the recommendation report of the Board of Examiners of Sex Offenders ("the Board"), the People's affirmation in support of the Board's recommendation and the exhibits attached thereto, the defendant's affirmation and exhibits attached [*2]thereto, the pre presentence investigation report, the trial transcript, the defendant's criminal history and the oral arguments of the People and defense counsel. FINDINGS OF FACT
At trial, evidence was put forth that on June 12, 2017, while boarding the Staten Island Ferry, the defendant approached the victim, a stranger, from behind and placed his hand on the victim's buttocks without permission to engage in such behavior. Following the jury trial, defendant was found guilty of Forcible Touching (Penal Law § 130.52[1]) and Sexual Abuse in the Third Degree (Penal Law § 130.55) on October 20, 2017. The defendant was sentenced to one year incarceration. An order of protection was issued in favor of the victim, as well.
Prior to this conviction, the defendant was previously convicted by guilty plea of Attempted Rape in the First Degree (Penal Law §§ 110/130.35) on July 16, 2008. He was sentenced to a determinate term of imprisonment of eight (8) years, to be followed by five (5) years of post-release supervision. Pursuant to that conviction, the defendant was designated a Level III sex offender. The defendant was accordingly advised by the Court that, pursuant to Correction Law § 168-a(2)(c)(ii), a conviction of either Penal Law § 130.52(1) or Penal Law § 130.55 where the defendant has previously been convicted of a sexually violent offense, such as an attempt of Penal Law § 130.35 as the defendant stood in the instant matter, requires an assessment of the defendant under SORA.
The instant offense is not the defendant's first or only conviction. Previously, on June 8, 1984, the defendant was found guilty after trial of Burglary in the Second Degree (Penal Law § 140.25[2]), a C Violent Felony offense. He was also found guilty of Burglary in the Second Degree pursuant t a separate indictment on August 2, 1984. The defendant was sentenced on July 3, 1984 to an aggregate term of imprisonment of five to fifteen years In 1990, the defendant was released into the custody of the Office of Mental Health ("OMH"). The defendant was released to parole on April 15, 1994, however, his parole was revoked on January 20, 1999 and he was returned to custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). On September 28, 1999, the defendant was once again discharged to the custody of OMH, his second period in their custody and care. He was subsequently returned to DOCCS on October 21, 1999, served the remainder of his sentence and released on his maximum expiration date of April 16, 2004.
On October 13, 1998, he was convicted of Criminal Contempt in the First Degree (Penal Law § 215.51[b][v]), a Class E Felony offense, and sentence to time served. The defendant was convicted of Intent to Obtain Transportation Without Paying (Penal Law § 165.15), a Class A Misdemeanor, on July 28, 2004 and sentenced to time served.
On July 16, 2008, the defendant pled guilty to Attempted Rape in the First Degree (Penal Law §§ 110/130.55), a Class C Violent Felony offense. According to [*3]the Board's recommendation, the defendant engaged in sexual intercourse with his thirteen-years old daughter by forcible compulsion. Specifically, the defendant grabbed that victim from behind, choked her and demanded she take her clothes off. The defendant further forced her legs apart and engaged in sexual intercourse with her without her consent. The defendant further forced the victim to perform oral sex on him and forced her to masturbate him. The defendant further placed his mouth on her breasts and performed oral sex on her. The defendant then had sexual intercourse with the victim again, made the victim take a shower with him and placed his mouth on the victim's breast again. The defendant was sentenced to a determinate term of imprisonment of eight years and a term of five years of post-release supervision. As a result of that conviction, the defendant was designated a Level III sex offender on July 23, 2013. The defendant was released to parole supervision on August 16, 2013. Due to the defendant's conviction in the instant matter, a parole violation was filed; however, his parole was not revoked and he completed parole on August 16, 2018.
The defendant's most recent conviction following his conviction here was a guilty verdict after trial of Persistent Sexual Abuse (Penal Law § 130.53), a Class E Felony offense, on December 17, 2019. According to the Board's recommendation, in that case, on August 21, 2018, the defendant squeezed the victim's buttocks with his hand while the victim was waiting to board the Staten Island ferry — an incident similar to the instant conviction. After his initial January 7, 2020 indeterminate sentence of four years to life incarceration was vacated on appeal, the defendant was resentenced on September 13, 2024 to four years' incarceration. 
Regarding the other relevant aspects of the defendant's criminal history, the Board's recommendation noted that, while incarcerated, the defendant participated in the Alcohol and Substance Abuse Treatment ("ASAT") program from April 23, 2012 to June 7, 2012, however, he did not complete the program. Additionally, the Board further indicated that the defendant successfully completed the Sex Offender Counseling and Treatment Program ("SOCTP") on January 29, 2023, which the defendant's memorandum highlighted, and the Court further explores below. The defendant also reported a history of mental illness, including Paranoid Schizophrenia, for which the defendant is medicated. The defendant also receives mental health services from OMH. 
CONCLUSIONS OF LAW
In connection with this determination, the Court has received and reviewed the Board's recommendation and Risk Assessment Instrument ("RAI"), the People's memorandum and attached exhibits, the defendant's memorandum and attached exhibits and the arguments presented at the hearing conducted on April 7, 2025.
The RAI sets forth the following scoring recommendations: 5 points under risk factor two related to sexual contact because contact was made over the victim's clothing; 20 points under factor seven related to the defendant's relationship with the victim because the defendant and victim were strangers; 30 points under factor [*4]nine related to prior crimes based upon defendant's prior sex conviction.
The People argued that, as recommended by the Board, the defendant should be assessed a total of 55 points, which amounts to level one, and that defendant's prior felony sex crime conviction should result in a presumptive override and elevates the defendant from level one to level three. Defendant did not contest the scoring proposed by the People or the presumptive override to level three.
In support of the scoring, the People rely on the trial transcript, the defendant's criminal history report, the RAI and the Board's recommendation. The Court finds that the People have established, by clear and convincing evidence, that the assessment of points for each of the risk factors discussed above for a total of 55 points is warranted. Accordingly, the defendant's score is 55 points, which corresponds to level one. These risk factors are uncontested, and it is further uncontested that the People met their burden of establishing, by clear and convincing evidence, that the defendant had previously been convicted of a felony sex crime. See People v Eaton, 105 AD3d 722 (2d Dept 2013); People v Carter, 85 AD3d 995, 995 (2d Dept 2011). Therefore, irrespective of the points scored on the Risk Assessment Instrument, there is a presumption that the defendant is a level three sex offender. See Sex Offender Registration Act: Risk Assessment Guidelines and Commentary (2006) (hereinafter, "the Guidelines") at 3; see also Carter, 85 AD3d at 995. The Court further finds that the People have established, by clear and convincing evidence, that defendant has a prior conviction for a felony sex crime which mandates an override to level three.
However, the defendant seeks a downward departure from level three to level two. A court has the discretion to downwardly depart from the presumptive risk level in a proceeding pursuant to SORA only after a defendant makes a twofold showing. See People v. Arroyo, 105 AD3d 926 (2d Dept 2013); see also People v Gillotti, 23 NY3d 841, 861 (2014). First, a defendant must identify, as a matter of law, an appropriate mitigating factor, namely, a factor which "tends to establish a lower likelihood of re-offense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the [SORA] Guidelines." People v Wyatt, 89 AD3d 112, 124 (2d Dept 2011); see also Gillotti, 23 NY3d at 861; Guidelines at 4. Second, a defendant must prove by a preponderance of the evidence the facts necessary to support the applicability of that mitigating factor. See Wyatt, 89 AD3d at 124; see also Gillotti, 23 NY3d at 863-864. If the defendant makes that twofold showing, the court must exercise its discretion by weighing the mitigating factor to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism. Id. at 861.
The defendant contends that, based on the totality of the record, including the years between convictions, advanced age, 60, and response to sex offender and mental health treatment, the defendant poses a moderate risk of re-offense. In support of these factors, the defendant has provided his SOCTP discharge summary and evaluation forms, as well as studies exploring minimized risk of re-offending. [*5]Although the defendant's argument cites to multiple appellate decisions, the decision where an Appellate Court reversed the lower court's decision to deny the defendant's request for a downward modification from a presumptive request is People v Williams, 148 AD3d 540 (1st Dept 2017).
Rehabilitation on the basis of the totality of the record is a mitigating factor that is not taken into account by the Guidelines or the RAI. See People v Abdullah, 31 AD3d 515, 516 (2d Dept 2006). "Advanced age" may also constitute a basis for a downward departure. See Guidelines at 5; People v Haims, 196 AD3d 516, 518 (2d Dept 2022). Additionally, a defendant's response to sex offender treatment may qualify as a ground for a downward departure where the response is "exceptional." People v Velasquez, 145 AD3d 924, 924 (2d Dept 2016).
However, while the defendant has identified factors not adequately taken into account by the Guidelines and the Board's recommendation in the instant matter, the defendant has failed to establish, by a preponderance of the evidence, that a downward departure is warranted. In particular, while the defendant has presented proof that he successfully completed a sex offender treatment program while incarcerated, he has failed to prove by a preponderance of the evidence that his response to the program was exceptional to warrant a downward departure. Indeed, the exhibits attached to the defendant's request mark the defendant's participation as "good" in most categories and place the defendant in the moderate category to reoffend. However, nothing in the defendant's treatment notes that these accomplishments establish at this stage that he is a low risk to sexually reoffend once he is released into the community. Furthermore, while the defendant has attached his SOCTP treatment records, absent from the records are letters of support from counselors or others demonstrating the defendant's exceptional response or turnaround, nor are there records from other mental health providers demonstrating a reduction in risk of reoffending. While the defendant deserves recognition for his successful completion of the program, the defendant has failed to demonstrate by a preponderance of the evidence that his "response to treatment, while positive, was exceptional." People v Coleman, 225 AD3d 792, 794 (2d Dept 2024); see also People v Smith, 194 AD3d 767, 768 (2d Dept 2021); People v Diaz, 180 AD3d 817, 818 (2d Dept 2020); People v McClendon, 175 AD3d 1329, 1331 (2d Dept 2019); People v Figueroa, 38 AD3d 708 (2d Dept 2016); People v Pendleton, 112 AD3d 600, 601 (2d Dept 2013); People v Perez, 104 AD3d 746, 746-747 (2d Dept 2013); People v Watson, 95 AD3d 978, 979 (2d Dept 2012).
The defendant's reliance on People v Williams further highlights that the defendant has not established a lower likelihood of sexually reoffending or danger to the community and which is of a kind, or to a degree, that is not adequately considered by the Guidelines because the facts of Williams are so different from the facts here. Indeed, Williams "present[ed] one of the rare cases in which [the Appellate Division held that it] should exercise [its] discretion to depart downward from defendant's presumptive risk assessment." Id. at 540. At the time of the rape for which he was convicted, the defendant there was 20 years old, suffering from [*6]alcoholism and had used PCP and marijuana. In the 30 years since he committed those crimes and an unrelated robbery, he took "major steps to turn his life around," including obtaining his GED, associate's degree and two bachelor's degrees. Id. at 541.
There, the defendant also completed "therapeutic programming related to substance abuse and nonviolent conflict resolution," acquiring counseling skills and becoming a program facilitator. Additionally, the defendant's attorney and two corrections officers spoke or wrote letters of recommendation on his behalf. Id. at 541-542. Moreover, Williams suffered from a decline in mobility while incarcerated, having fallen down a flight of stairs and suffering multiple disk herniations that required surgery and from which he continued to suffer. Id. at 542. In concluding that a departure from a level three to a level two was warranted, the First Department observed that the Guidelines "d[id] not adequately capture the exceptional degree to which defendant has worked to rehabilitate himself." Id. at 543. In contrast, the defendant here has failed to present any letters or testimony in support of his application for a downward departure, any educational or vocational accomplishments since the offense, nor has he highlighted a physical decline that would reduce his risk of re-offense.
Defendant's reliance on statistical studies finding that recidivism rates decline with advancing age further fail to support his claim that he is at a moderate risk of re-offending. The crimes for which the defendant was either found guilty or pled guilty that are at issue here occurred he was between the ages of 42 and 52. Even if sexual recidivism declines with advanced age, defendant is still less than eight years since the conviction on the underlying offense here, most of which time the defendant has been incarcerated, and studies alone, in the absence of evidence about the defendant himself, do not warrant a downward departure. See People v Palomeque, 170 AD3d 1055, 1056 (2d Dept 2019) ("the defendant, who committed the subject offense when he was in his 40s, failed to demonstrate that his age at the time of the SORA determination, 53 years old, resulted in an overassessment of his risk to public safety and, thus, did not meet his burden of proof in establishing that this mitigating circumstance actually existed"); People v Shelton, 126 AD3d 959, 959-60 (2d Dept 2015) (where defendant, who was 60 years old at the time of the SORA hearing, made several arguments in favor of downward departure, the most significant of which was "citation of studies showing that a sex offender's risk of recidivism drops significantly with increased age," SORA court did not improvidently exercise its discretion in concluding that presumptive risk level did not over-assess danger presented by defendant and risk of re-offense); see also McClendon, 175 AD3d at 1331 ("defendant failed to demonstrate that his age at the time of the SORA hearing, 60 years old, constituted an appropriate mitigating factor and minimized his risk of re-offense, particularly since the rape of the victim took place when the defendant was 47 years old"); People v Munoz, 155 AD3d 1068, 1069 (2d Dept 2017) (defendant failed to demonstrate that his age at time of SORA hearing, 57 years old, would in and of itself reduce risk of reoffending).
The defendant's reliance on the Static-99 is likewise unavailing. First, "The defendant's score on the Static—99 classifying him as a moderate to high risk to reoffend is not a circumstance which, standing alone, may be considered a mitigating factor." People v Downes, 216 AD3d 1183 (2d Dept 2023); see also People v Desnoyers, 180 AD3d 1080, 1081 (2d Dept 2020) (the Static-99 "does not, by itself, constitute a mitigating factor justifying a downward departure from the presumptive risk level"). Furthermore, while the defendant points to certain factors, such as his age at the time of his release and prior sentencing dates, these factors have already been addressed by the Court, and, therefore, the defendant has not identified any "specific, unique risk factor on the Static—99 that would serve as a mitigating factor in this case." People v Vega, 189 AD3d 1288, 1289 (2d Dept 2020); see also Desnoyers, 180 AD3d at 1081. Additionally, the lack of male victims in the defendant's criminal history does not outweigh the aggravating factors here, and, considering the totality of the circumstances, an assessment to a level three is warranted to avoid an underassessment of the defendant's risk of sexual recidivism. See People v Williams, 186 AD3d 883, 885 (2d Dept 2020); People v Singleton, 190 AD3d 466, 467 (1st Dept 2021). 
Moreover, while "[a]n offender's rehabilitation as evidenced by the totality of the record may, under some circumstances, constitute a proper mitigating factor for a downward departure," the defendant did not prove by a preponderance of the evidence the facts in support of this alleged mitigating factor, especially in the absence of other supporting factors or proof, such as participation in education programs, community support, housing or employment assurances or treatment plans upon release. See People v Haims, 203 AD3d 1184, 1186 (2d Dept 2022); People v Santogual, 157 A.D3d 737, 738 (2d Dept 2018).
Further, the Court finds that the nature of the underlying crimes outweighs any mitigation that would warrant a departure to risk level two. Specifically, clear and convincing evidence has been put forth that after being convicted by a plea of guilty to Attempted Rape in the First Degree, the defendant was sentenced to a period of incarceration and committed the instant offense while under community supervision wherein the defendant placed his hand on the victim's buttocks while she boarded the Staten Island Ferry.
Accordingly, based on the foregoing, the Court finds that the defendant has not demonstrated appropriate mitigating factors which would establish a low likelihood of reoffense or danger to the community. See Wyatt, 98 AD3d at 128; Correction Law § 168—l(5); see also People v Martinez, 104 AD3d 924, 925 (2d Dept 2013); People v Peeples, 98 AD3d 491 (2d Dept 2012). Therefore, the Court finds that the defendant is a Level 3 Predicate Sexual Offender.
Applying the governing legal principles here to the submissions from both parties and the Board, as well as the records put forth at the hearing, this Court finds that the defendant has failed to establish, by a preponderance of the evidence, facts warranting a downward modification. While the circumstances that defendant proffers may not be adequately accounted in the RAI and [*7]recommendations, the Court finds that, in weighing any mitigating factors, a downward departure is not warranted. Given the totality of the circumstances, the presumptive risk level is an accurate assessment of dangerousness and risk of recidivism. Accordingly, defendant's application for a downward departure is denied.
CONCLUSION
In sum, upon examining the submissions in their totality, the defendant is adjudicated a level three sex offender and designated a predicate sex offender.
The foregoing constitutes the order and decision of the court.
Dated: May 1, 2025
Staten Island, New York
E N T E R:
RAJA RAJESWARI, A.J.S.C.